CHICAGO & A. RY. CO. *v.* NEW YORK, L. E. & W. R. CO. and another.

*(Circuit Court, S. D. New York. July 8, 1885.)*

**1. REMOVAL OF CAUSE—SEPARATE CONTROVERSY.**
As the bill in this case discloses a separate controversy between plaintiff and the removing defendant, the motion to remand is denied.

**2. INJUNCTIONS—DAMAGES—INADEQUATE REDRESS.**
Injunctions to restrain breaches of negative covenants and mandatory injunctions to compel the observance of affirmative covenants are granted when the threatened breach of an existing contract is clearly shown, but only when the recovery of damages at law would inadequately redress the impending injury.

**3. CONTRACT—CONDITION.**
Where an agreement is not to be deemed complete until certain parties have signed it, those who have signed it cannot, after they have shown by acting under it that they considered it complete, although not signed by the others, claim that it is not binding and merely inchoate.

**4. INJUNCTION—VIOLATION OF COVENANTS.**
Equity will restrain the violation of covenants by injunction, notwithstanding their nature is such that specific performance would not be decreed.

**5. RAILROAD COMPANIES— CONTRACT TO ESTABLISH DISPATCH FREIGHT LINE— INJUNCTION.**
Contract between plaintiff and defendant railroad companies, whereby they agreed to establish a dispatch freight line for their mutual benefit and profit, construed, and *held* that a breach thereof should be enjoined.

In Equity.
*Joseph H. Choate* and *Charles L. Atterbury*, for plaintiff.
*B. H. Bristow* and *W. W. McFarland*, for defendants.

WALLACE, J. This suit was removed from the supreme court of this state to this court upon the petition of the New York, Lake Erie & Western Railroad Company. The plaintiff moves to remand, and the motion presents the single question whether there is a controversy in the suit which is wholly between the removing defendant and the plaintiff, and which can be fully determined as between them.

The bill of complaint is filed to restrain the defendants from violating the conditions of several contracts entered into between the parties, and for an accounting for moneys due to the plaintiff, and for damages. One cause of action against the defendants is founded upon the alleged breach of the second clause of the agreement, Exhibit A, annexed to the bill, whereby each defendant covenants to make good any deficiency in the earnings of the plaintiff necessary to pay plaintiff's interest upon its issue of mortgage bonds in the proportion to which each defendant may respectively receive gross earnings accruing from its traffic with the plaintiff. The undertaking thus expressed is not a joint one on the part of the defendants, but is several and distinct by each, and the liability of each is measured by its own proportion of gross earnings received from its traffic with the plaintiff. *Adriatic Fire Ins. Co.* v. *Treadwell,* 108 U. S. 361; S. C. 2 Sup. Ct. Rep. 772. There is nothing in the agreement which implies that the defendants are to be sureties for each other, or answerable for each other's default.

Although a joint accounting is demanded, the liability of each defendant is several, and the complainant cannot convert a controversy which is wholly between itself and each of the two defendants into one between itself and both defendants, by treating it as joint in the prayer for relief. It is only where the cause of action is founded upon a joint and several liability that a plaintiff may, at his election, proceed against both defendants jointly or each severally. *Boyd* v. *Gill,* 19 FED. REP. 145; *Louisville & N. R. Co.* v. *Ide,* 114 U. S. 52; S. C. 5 Sup. Ct. Rep. 735. The removing defendant and the plaintiff are the only indispensable and the only proper parties to the suit, so far as it is founded upon the breach of the second clause of Exhibit A. The bill thus discloses a separate controversy between the plaintiff and the removing defendant, and the motion to remand should therefore be denied.

The defendants move to dissolve the *ex parte* injunction obtained by the plaintiff in the state court, restraining the defendants from diverting the traffic of the Great Western Dispatch Freight Line from the railroad of the plaintiff, and from diverting any traffic from the plaintiff's road which it is entitled to receive under various agreements set out in the complaint, and from retaining and appropriating certain moneys of plaintiff to which plaintiff claims to be entitled under various provisions of the agreement between the parties.

It cannot be seriously contended that the injunction should be permitted to stand in the broad form in which it was granted. So far as it restrains the defendants from retaining and appropriating moneys which they ought to pay over to the plaintiff, it should be vacated, because the plaintiff has an adequate common-law remedy to recover these sums. Injunctions to restrain breaches of negative covenants, and mandatory injunctions to compel the observance of affirmative covenants, are granted when the threatened breach of an existing contract is clearly shown, but only when the recovery of damages at law

would inadequately redress the impending injury. So far as the injunction restrains the diversion of traffic from the plaintiff, the plaintiff's case rests upon the breach of two distinct contracts. The first is a contract between the parties by which, in consideration of the mutual stipulations to be kept and performed by each, they agreed that so much of the railroad of the defendant the New York, Lake Erie & Western Railroad Company as extended from the city of New York to Salamanca, and so much of the railroad of the defendant the New York, Pennsylvania & Ohio Railroad Company as extended from Salamanca to Marion, Ohio, should form, with the railroad of the plaintiff extending from Marion to Chicago, and then under construction, a through line for traffic, both freight and passenger, between New York and Chicago. In that agreement the plaintiff covenanted to forward by said through line all freight and passengers which it could lawfully control to all points reached by the railroads of the defendant and their respective connections, provided the same could be done at equal rates and with equal facilities of any other line or route.

The defendant the New York, Lake Erie & Western Company covenanted on its part, so far as it could lawfully control the same, to forward by the way of the railroads of the New York, Pennsylvania & Ohio Company and of the plaintiff, as nearly as practicable, as large a proportion of its all-rail business destined for Chicago and points beyond as the business received by it from Chicago and points beyond, over the railroad of the plaintiff, and of the New York, Pennsylvania & Ohio Company, should bear to the whole amount of its all-rail business from Chicago and points beyond. The New York, Pennsylvania & Ohio Railroad Company covenanted on its part to forward by the railroad of the plaintiff as large a proportion of its business destined for Chicago and points beyond, originating on its own line, as the amount of its business from Chicago and points beyond, coming to it over the road of the plaintiff, should bear to the whole amount of the business coming to it from Chicago and points beyond, and destined for points on its road and its connection. It was further provided in this agreement that through rates on all business done over the three roads should be divided between them proportionately to the distance carried on their said roads, respectively, after deducting the usual terminal and lighterage charges.

The bill does not allege in specific terms the breach of any of the covenants in this agreement on the part of the defendants. It avers on information and belief that the defendants "have violated their contracts with the plaintiff for the maintenance and support of the through line between New York and Chicago by the diversion of traffic therefrom, and by other acts hostile to the interests of such through line;" but in what particulars the defendants have violated their contract does not appear. By a reference to the affidavits accompanying the bill, it appears that the defendant the New York, Lake Erie

& Western Company has collected and retained, and refuses to pay over, moneys, a portion of which belongs to the plaintiff. Clearly the plaintiff cannot maintain its injunction if this is the only breach of the agreement on the part of the defendants. The general averment of a diversion of traffic, when none of the circumstances are shown, is a mere conclusion of law. The bill would be bad upon demurrer. *Dillon* v. *Barnard*, 21 Wall. 430, 437. More than this is necessary to authorize an injunction. *Spooner* v. *McConnell*, 1 McLean, 337, 360; *Brooks* v. *O'Hara*, 8 FED. REP. 529.

Aside from the failure to allege sufficiently a breach of this agreement, there is another fatal objection to the plaintiff's case, so far as it is founded upon this agreement. By the terms of the agreement the defendants were to forward by the railroad of the plaintiff only such a proportion of their Chicago traffic, respectively, as the amount they should respectively receive from the plaintiff bears to the whole amount of traffic coming to the defendant from Chicago and points beyond. There is no allegation in the bill that the defendants have not forwarded to the plaintiff the requisite proportion of traffic to which the plaintiff is entitled under the terms of the agreement. If they have forwarded that proportion the plaintiff has no cause of complaint.

The plaintiff's right to an injunction must be sustained, if it can be sustained at all, upon the case made in respect to the second agreement referred to. By that agreement the plaintiff, the defendant the New York, Lake Erie & Western Company, and several other railroad companies, undertook to form a co-operative organization for the development and accommodation of connecting through freight traffic between certain western and eastern points and districts upon or reached by their respective roads and their connections. The parties agreed to establish a freight line to be known as the Great Western Dispatch, to be operated via Salamanca, both eastwardly and westwardly, solely upon and in connection with the roads of the several railway companies that were parties to the agreement. They were to contribute a capital or line fund and pay expenses in proportion to their earnings, and were to contribute cars in proportion to their business. Each party agreed to give the Dispatch line as favorable rates, time, and working facilities as it should give to other freight lines, and to place it on as favorable a footing in every respect as the most favored lines operating by other routes or roads between the same or similar points. West-bound rates were to be controlled by roads east of Salamanca, and east-bound rates by roads west of Salamanca; and the rates were to be maintained as high as those of other competing lines. The line was to be in charge of a general manager, selected by the companies, who was to have control of its agents, and to whom accounts were to be transmitted by the several companies, and who was to adjust and pay over the sums accruing to each.

The agreement is silent in regard to the manner in which traffic is to be secured for or contributed to the Dispatch line by the several companies. There is no stipulation, express or inferential, which binds either of them to give traffic or business to the Dispatch. The provision that the parties shall give to each other facilities equal to those given to like traffic of other railway lines, negatives the inference that their traffic or business is to be given exclusively to the Dispatch. Manifestly it was the contemplation of the parties to this agreement that their mutual interests would be promoted and developed by this co-operative organization, and that considerations of profit and convenience would induce each to contribute its full share of traffic. The bill alleges that by the terms of this agreement each party stipulated to give to the line all traffic it could control, intended for shipment between points upon the lines of the railroads, parties to the agreement. This averment is a mere conclusion of the pleader, and wholly unwarranted by the agreement. The breach assigned is in part predicated upon this unfounded allegation.

It is alleged, however, and the affidavits support the bill in this regard, that traffic destined for transportation over the Dispatch line, and received by it, has been continuously diverted, by the influence and intervention of the defendant the New York, Lake Erie & Western Company with the manager of the Dispatch line, from the railroad of the plaintiff to lines of railroad companies not parties to the agreement. If freight is delivered to the defendants for transportation by the Dispatch line to Chicago, or to intermediate points to which, by the usual course of business, it would be transported over the plaintiff's railroad, and the traffic which the plaintiff would thereby receive has been diverted by the actions of the defendants, a substantial breach of the agreement on the part of the defendants has taken place, because the agreement expressly provides that the freight line is to be operated solely by the railway companies parties to the agreement. The plaintiff is entitled to receive its due proportion of the traffic which it would thus derive. It is apparent, from the facts stated in the affidavit, as well as from the character of the agreement itself, that it would be difficult and probably impossible to determine the extent of the pecuniary loss which the plaintiff may sustain by this diversion of traffic. The defendants insist that the plaintiff has violated the agreement upon its part; but the affidavits do not sustain this assertion.

The defendants rely upon two legal propositions to defeat the right of the plaintiff to an injunction restraining this diversion of traffic: *First.* It is contended that the agreement for the organization and maintenance of the Dispatch line is not valid, because various railroad companies who were named in the agreement as parties to it did not sign or subsequently come in under its terms. Doubtless an agreement which is not to be deemed complete until other signatures should be attached to it, is not binding upon those who have signed

it. But here the parties who sign have placed their own interpretation upon the agreement, and shown by their own acts in maintaining the organization and transacting the business according to its provisions since the first day of January, 1884, that they regarded it as complete, although not signed by the others. It is quite too late for them to say now that it was merely an inchoate affair. *Secondly.* It is contended that the agreement is of such a character that a court of equity will not attempt to decree its specific performance, and therefore an injunction should not be granted to restrain its breach. It is urged that the contract is one in which the skill, experience, and cultivated judgment of the parties must be exercised, in order to confer upon either of them the substantial benefit of its performance, and also that it would require a constant supervision and intervention on the part of the court, during the five years of the life of the contract, to enforce its observance.

The cases, *Fallon* v. *Railroad Co.* 1 Dill. 121; *Marble Co.* v. *Ripley,* 10 Wall. 358; *Port Clinton R. Co.* v. *Cleveland & T. R. Co.* 13 Ohio St. 544; and *Ross* v. *Union Pac. Ry. Co.* Woolw. 26, are cited as adjudications of our own courts in point; and the English cases, *Lumley* v. *Wagner,* 1 De G., M. & G. 604; *Johnson* v. *Shrewsbury & B. Ry. Co.* 3 De G., M. & G. 914; *Peto* v. *Brighton Ry. Co.* 11 Wkly. Rep. 874, are also cited.

In many cases where the act to be done by the delinquent party was not a single act, to compel which a single decree of the court would be sufficient, but a series of acts which would call for the frequent interposition of the court during a protracted period of time by successive decrees or orders, the inconvenience of the remedy of specific performance has been deemed so great that the courts have refused to interfere, and have left the party aggrieved to his remedy at law. So, also, when the act to be performed depends upon the skill, experience, and cultivated judgment of the person who has obligated himself for its performance, courts of equity will not undertake to coerce a literal and perfunctory performance which would be but a vain and idle act.

It is one thing, however, to stop a party from doing that which he cannot rightfully do, and another to undertake to compel him to do an act involving the exercise of faculties and judgment which are peculiar and personal to himself; and the argument from inconvenience which may properly be invoked when the court is asked to decree a specific performance would, if it should be controlling when the court is asked to restrain the doing of an unlawful act, apply to all cases in which the corrective power by injunction is exercised.

In the case of *Lumley* v. *Wagner* the defendant had entered into an engagement with the plaintiff to sing at his theater, and not to sing at any other theater, and it was held that although the court would have been unable to specifically enforce the defendant's affirmative covenant to sing, it could, nevertheless, restrain a violation of

his negative covenant. *McCaull* v. *Braham,* 16 FED. REP. 38, is a similar case. In *Singer Sewing-machine Co.* v. *Union Button-hole & E. Co.* 1 Holmes, 253, the court, after a careful review of the authorities, held that an injunction may be granted to restrain acts in violation of a lawful contract, although the nature of the contract is such that specific performance would not be enforced. LOWELL, J., said: "It is now firmly established that the court will often interfere by injunction when it cannot decree specific performance." To the same effect is *W. U. Tel. Co.* v. *Union Pac. Ry. Co.* 3 FED. REP. 423, 429; *Wells, Fargo & Co.* v. *Oregon Ry. & N. Co.* 16 Amer. & Eng. R. Cas. 71; and *Wells, Fargo & Co.* v. *Northern Pac. R. Co.* 18 Amer. & Eng. R. Cas. 441.

*Wolverhampton & W. Ry. Co.* v. *London & N. W. Ry. Co.* L. R. 16 Eq. 433, is a case quite in point, where the defendant was restrained from a wrongful diversion of traffic on the plaintiff's road. The agreement between the two companies was that the defendant should work the plaintiff's line, and during the continuance of the agreement develope and accommodate the local and through trade thereof, and carry over it certain specified traffic. The bill was filed to restrain the defendant from carrying a portion of the traffic which ought to have passed over the plaintiff's line by other lines of the defendant. The point was made by the defendant, which is made here, that the court could not undertake to enforce specific performance upon such a contract, because it would require a series of orders, and a general superintendence, to enforce the performance, which could not conveniently be administered by a court of justice; but the point was overruled and the injunction granted.

It is not a valid objection to the plaintiff's right to an injunction that other railroad corporations, parties to the agreement, are not parties to this controversy. None of them are interested in the specific controversy now before the court. It has been assumed by the plaintiff, upon the argument of the motion, that the defendant the New York, Pennsylvania & Ohio Railroad Company was a party to the agreement. It appears, however, that its only relation to the Great Western Dispatch line is that of lessor to the defendant the New York, Lake Erie & Western Railroad Company, and all acts done in violation of the agreement have been those of the latter company.

The order of the court, therefore, is that the injunction be vacated as against the New York, Pennsylvania & Ohio Railroad Company, and as against the other defendant that it be modified in accordance with this opinion.