JOHN R. HEINZ, Appellant, v. JOHN ROBERTS, Appellee.

**Appeal:** NOTICE: CLERICAL DEFECT. A notice of appeal which is
1 correct in all other respects is not rendered fatally defective because of a clerical error in mis-naming the plaintiff.

**Contracts in restraint of trade:** BREACH: INJUNCTION. An injunc-
2 tion will lie to enjoin the breach of an agreement not to reengage in business at a certain place for a specified time, although the contract provides for liquidated damages in case of its breach, but does not indicate that the parties intended the same as an exclusive remedy. WEAVER, C. J., dissenting.

*Appeal from Hardin District Court.*— HON. J. R. WHITAKER, Judge.

TUESDAY, MARCH 12, 1907.

REHEARING DENIED THURSDAY, OCTOBER 24, 1907.

SUIT in equity to enjoin defendant who is an attorney at law from practicing his profession at the town of Ackley. Trial to the court, resulting in a decree dismissing the petition.    Plaintiff appeals.— *Reversed* and *remanded.*

*M. J. Wade,* for appellant.

*Albrook & Lundy,* for appellee.

DEEMER, J.— The notice of appeal is in the usual form giving the title of the case and addressed to John S. Roberts and to Albrook & Lundy, his attorneys, but it states that plaintiff, John R. Roberts, has appealed from the decision, etc.    It is signed by M. J. Wade as attorney for plaintiff.    It is claimed that this notice in naming plaintiff as " John R. Roberts " is fatally defective, and gives us no jurisdiction of the appeal. The notice is perfect in all respects, save in so far as it calls John R. Roberts plaintiff.    That this is a mere clerical mistake is perfectly clear; and as the notice contains all that is required, the name John R. Roberts, which is clearly a mistake of the draftsman, may be disregarded, and a sufficient notice yet remains.    This matter was first presented in an amended abstract filed with appellee's argument. He had theretofore appeared in the case, and filed an amended abstract, in which he made no reference to the alleged defect in the notice; and, as the notice was at most simply defective, he, by his appearance, waived ˙the defect. None of the cases cited for appellee are controlling.    On the contrary, our conclusions are sustained by *Geyer v. Douglass,* 85 Iowa, 93; *Searles v. Lux,* 86 Iowa, 61; *Roundy v. Kent,* 75 Iowa, 662.    The motion to dismiss the appeal is overruled.

1. APPEAL: notice: clerical defect.

II.    Defendants are each attorneys at law residing at Ackley in this State.    It appears from the testimony that defendant, who is an old practitioner, was desirous of remov-

ing from Ackley, where he was then engaged in the practice

2. CONTRACTS IN
RESTRAINT
OF TRADE:
breach:
injunction.

of law, and of selling his library and fixtures, good will, etc., entered into negotiations with plaintiff which resulted in a sale thereof to the plaintiff for the agreed price of $600, $200 of which was paid in cash, and the remainder by two notes — one for $100, and the other for $300. The negotiations were closed on the 7th day of April, 1904; defendant executing to plaintiff a bill of sale, plaintiff paying the cash, and making notes for the amounts above stated. In the bill of sale the library and office fixtures, as well as the good will of the business, were expressly conveyed, and in addition thereto, we find the following stipulations: " It is further agreed on the part of said J. S. Roberts that he will not open a law office in the town of Ackley, Iowa, or vicinity thereof, or practice his profession in said town or vicinity for the period of ten years from and after this date; except to close the business now in his hands; and should the said John S. Roberts in any manner violate the terms of this agreement, he shall forfeit and pay to the said John R. Heinz the sum of $600, the same being the agreed and stipulated damages for said breach. And the said J. S. Roberts further agrees to give his time and attention to the business now as established, and to secure new additional and other buiness for said office from this date to the 10th day of June, 1904. And the said J. S. Roberts is to turn over to the said John R. Heinz all unfinished business remaining in the hands of the said J. S. Roberts after the 10th day of June." The $300 note was in the usual form, due two years after date, save that it bore this endorsement upon the back thereof: " The payee in this note, J. S. Roberts, as part consideration, stipulates and agrees not to open a law office in the town of Ackley, Iowa, or practice his profession in said town for the term of two years from and after the date of this note, and should the said J. S. Roberts violate this agreement, then this note to be null and void and of no

effect.  J. S. Roberts."  Defendant sold and received the money upon the $100 note, and has not returned or offered to return either this sum or the $200 received in cash; and he still holds the $300 note.  Shortly after the sale defendant left Ackley and went to the State of Washington, where he remained until about November 2, 1904, when he returned to Ackley, and on or about January 4, 1905, again opened a law office, and commenced the practice of his profession.  Before returning he wrote a letter to plaintiff, saying that he should return to Ackley to look up a location, but that he would respect his agreement, and would not open an office in Ackley.  To others he said that he had no right to practice law at that place.  After his return he tried to adjust the matter with plaintiff, and plaintiff made a proposition which was not accepted, and defendant then opened his law office as before stated.

On February 28, 1905, plaintiff commenced this action, which was originally to obtain damages and to restrain defendant from violating his agreements before stated; but before the case was brought on for trial such pleadings were filed as withdrew all claims for damages or for return of the consideration, and made plaintiff's case simply one to enjoin defendant from opening a law office or practicing his profession in the town of Ackley for ten years from and after April 7, 1904.

The petition alleges that defendant is insolvent, and the proof is sufficient to establish that allegation — that is to say, after deducting exemptions, defendant has no property of any considerable value, subject to execution.  That such covenants as defendant made in this case may be enforced by injunction is well settled by authority. *Ropes v. Upton,* 125 Mass. 258; *Beatty v. Coble,* 142 Ind. 329 (41 N. E. 590); *Althen v. Bruland* (N. J. ch.), 36 Atl. 479; *Dwight v. Hamilton,* 113 Mass. 175.  But defendant contends that, taking the contracts as a whole and in their entirety, the penalty for violation was fixed in the

agreement as the price for a breach, and that plaintiff is en-
titled to nothing more than a money judgment and the en-
forcement of the penalty.   Of course there may be cases as
*Martin v. Murphy,* 129 Ind. 464 (28 N. E. 1118), where
an injunction will not lie because of the peculiar stipulations
of the agreement; but, generally speaking, the mere fact
that a sum of money is named as payable upon breach of
such a contract, whether it be treated as a penalty, or as
liquidated damages, is not sufficient ground for denying an
injunction.   *McCurry v. Gibson,* 18' South. 806 (108 Ala.
451, 54 Am. St. Rep. 177); *Ropes v. Upton, supra; Dia-
mond Match Company v. Roeber,* 106 N. Y. 473 (13 N. E.
419, 60 Am. Rep. 464).   The rule is thus stated in *Ropes
v. Upton:* " This is a distinct agreement independent of
the stipulation as to the money to be paid, if he violates his
agreement, or, to use the precise language, ' in case of a
breach of these conditions.'   These words show that the de-
fendant could not engage in the business without breaking
the agreement not to do so.   The substance of the whole
paper is that the defendant covenants that he will not do a
particular thing, and then he says: ' If I do I will pay
you $1,000 as set forth,' but this does not prevent a court
of equity from enjoining him from doing that which he has
agreed not to do.  .  .  .   But assuming this to be a case
of liquidated damages, there is abundant authority to show
that the distinction contended for is not regarded by courts
of equity.   Where a person enters into an agreement not to
do an act, and gives his bond to another to secure it in a
penal sum, the latter has a right in law and equity, and can
obtain relief in either; but not in both courts."   The same
principle was announced by us in *Kettering v. Eastlack,* 130
Iowa, 498, where we said:  " It is plain in this case that
the contract was to convey, and not primarily to pay, dam-
ages.   If the plaintiff had sought relief in an action at law,
he no doubt would have been limited to the recovery of the
damages stipulated; but there is nothing in the contract to

indicate that plaintiff should be confined to his remedy at law, and denied his equitable right to enforce specific performance."

Going back now to the contracts, and construing them in the light of the attendant circumstances and of the subsequent conduct of the parties, we think it clearly appears that the penalty provided in this case was not regarded by either party as the price for defendant's doing what he had expressly agreed not to do. He sold his good will to plaintiff, and agreed not to go into the practice or to open an office for a given period. He went into another State, and before returning, wrote a letter to plaintiff, in which he recognized the binding force of his covenant, and that he had no right to return to Ackley and practice law. After his return to Ackley, he stated to various parties that he had no right to stay in Ackley and practice law. He sold the $100 note given him by plaintiff in December, 1904, after his return to Ackley, and has never returned or offered to return either the $200 in cash, or the amount for which he sold the $100 note. He still holds the $300 note. Consideration of all these facts leads us to the conclusion that it was not intended by either of the parties that the penalty named in the contract should be the only price of defendant's breach of agreement. It was not expected that the forbidden act might be done upon payment of the sum specified. Even if that were the proper construction, defendant has neither paid nor offered to pay the price. Surely, under such circumstances, defendant was not entitled to a dismissal of the petition. Of course plaintiff is not entitled to both remedies; nor does he ask it. He seeks an injunction, and waives his right to enforce the penalty; and, having secured an injunction, he cannot defend against the $300 note.

The trial court was in error in dismissing the petition, and the cause will be reversed for a decree in harmony with this opinion.— *Reversed* and *remanded.*

WEAVER, C. J. (dissenting):— Conceding the correctness of the general rule affirmed in the majority opinion, I think it equally true that in this class of contracts, as in others, the intention of the parties is to prevail. If, then, the language of the agreement, when read in its entirety in the light of all the attendant circumstances, indicates that the parties contemplated a possible violation of its terms by the seller, and stipulated the remedy of the purchaser in such case to be the right to demand and recover a fixed and certain sum in damages, equity will not entertain jurisdiction to enforce specific performance by the negative process of injunction. While the natural right of a man to pursue his chosen calling wherever he may elect to make his home is one which, within certain limits he may sell or barter away, yet it is a settled principle of public policy that such agreements will be closely scanned by the courts, and, in cases of doubt, will be given the construction most favorable to the unrestricted liberty of the parties to engage in any lawful enterprise or business. In my opinion, the contract in this case, as expressed in the written agreement for the sale of the defendant's business, and emphasized by the further stipulation indorsed on plaintiff's note, clearly indicates a mutual intention and understanding that plaintiff's only remedy in the event of defendant's resumption of practice in Ackley was in damages.

Such being my view of the construction of the contract, I think the judgment below should be affirmed.