[No. 16418. Department Two. November 5, 1921.]

# WASHINGTON CRANBERRY GROWERS ASSOCIATION, Respondent, v. A. B. MOORE, Appellant.[1]

CONTRACTS (45) — MONOPOLIES — VALIDITY—RESTRAINT OF TRADE—CONTROLLING PRODUCTION AND PRICE OF COMMODITY. A contract requiring a grower of cranberries to ship all the crop grown by him to an association for the purpose of marketing and sale with the object of enabling the growers to obtain a uniform price for their product, but which does not operate to limit production or control the price in any particular locality, is not void as against public policy, nor as contravening art. 12, § 22, of the state constitution against mo-. nopolies, nor the Federal anti-trust act.

INJUNCTION (24)—CONTRACTS—RESTRAINING BREACH—DAMAGES AS ADEQUATE REMEDY. Injunction will lie to restrain the breach of a contract, thereby indirectly effecting its specific performance, where the intent was to rely on performance and the contract is one which could not be specifically enforced in a court of equity by reason of the fact that it would require the performance of continuous duties.

SAME (24). A breach of a contract may be properly restrained, where it provides for damages in case of a grower's failure to deliver his crops to an association for marketing, merely as an estimate, but recites it is impossible to fix the actual damages sustained in case of a grower's failure to abide by the agreement, and the purport of the whole ·contract shows that .the parties intended to rely upon the performance of the covenant and not merely on. the payment of damages for the breach thereof.

MACKINTOSH, HOLCOMB, and HOVEY, JJ., dissent.

Appeal from a judgment of the superior court for Pacific county, Hewen, J., entered December 18, 1920, in favor of the plaintiff, in an action for an injunction, tried to the court. Affirmed.

*Welsh & Welsh,* for appellant.

*John J. Langenbach,* for respondent.

MAIN, J.—The purpose of this action was to restrain the breach of a contract. The trial resulted in a permanent injunction, from which the defendant appeals.

[1]Reported in 201 Pac. 773; 204 Pac. 811.

The Washington Cranberry Association is a corporation organized under the laws of this state and is engaged in the business of marketing cranberries for those with whom it has contracts, and in some instances for independent growers. The appellant had entered into a contract with the corporation by which he agreed to deliver to it all the cranberries grown by him in Pacific county on land owned by him. The contract provides as follows:

"Witnesseth: That the grower, for and in consideration of one dollar paid him by the association, receipt of which is hereby acknowledged, and of the covenants and agreements herein contained, hereby nominates, appoints and agrees to employ the association as exclusive sales agents for the purpose of selling and marketing the entire crop of cranberries now growing or which shall be grown for shipment by the grower or for him, or in which he may have any interest as landlord or tenant, upon all those certain tracts of land situated in Pacific county, Washington, described as follows: Metes and bounds in section 27, township 16, north of range 11, west of Willamette Meridian, during the year 1916 and every year thereafter continually, provided, however that the grower may cancel this contract on the 15th day of January in any year by giving notice in writing to the association in writing at least 15 days prior to that date. Upon giving notice the grower shall, prior to said 15th day of January, pay any and all indebtedness due from him to the association and deliver his copy of the said contract to the manager of the association, and the same shall thereupon be cancelled.

"The grower agrees at his own expense to cultivate, care for and harvest said crops. All fruit to be delivered by the grower at the warehouse of packing station of the association, at such place and at such time and in such manner as may be designated by the said association, which shall give notice to the grower for such delivery.

"In the event that grower shall fail to fulfill any or all of the requirements set forth in the foregoing paragraph, the association through its manager shall give to the grower written notice setting forth the default of the grower, and in event the default so specified shall not have been overcome or corrected within ten (10) days following delivery of such written notice to grower, it is mutually agreed that the association may consider this contract as cancelled, and shall be relieved from further responsibility with regard to marketing the grower's fruit hereunder.

"The grower fully understands that the purpose, among others, of this agreement, is to maintain and increase to its greatest efficiency the association as well as the Central Selling Agency with which it is now or hereafter may be affiliated, and to accomplish this purpose it is necessary that he shall strictly and fully comply with and perform the stipulations and agreements on his part agreed herein to be performed, and therefore he hereby stipulates and agrees that he will not sell or otherwise dispose his said fruit to any other firm, person or corporation other than the aforesaid association; and it is hereby further mutually agreed that inasmuch as it is impossible at this time to fix and estimate the actual damage which will be sustained by the association in the event that the grower shall fail to abide by his agreement to market his said fruit through the association, such damages are hereby estimated and agreed upon as one dollar per box for each box of cranberries grown or sold by the grower, which sum shall be allowed in any action brought by the second party to recover damages for the breach of this agreement by the grower should the association elect, as it may elect, to bring such action.

"In consideration of its appointment as exclusive sales agent of growers' fruit crop, as above set forth, and in further consideration of the agreements made by the grower with the association as hereinbefore set forth, the association agrees to receive, ship and sell all of said fruit to the best possible advantage. To promptly remit returns therefor, less its regular charge for aforesaid services and for any other deduc-

tion, including money, due for advances for supplies furnished by the association to the grower, which indebtedness grower agrees may be treated by the association as a first lien on the proceeds from his fruit, and payment therefor to be deducted accordingly.

"In witness whereof the association has caused this contract to be signed and sealed in its name and behalf by its president and its secretary, and all other parties have hereto affixed their individual signatures. Washington Cranberry Growers' Association, C. K. Cooper, President. Attest: W. M. Rounds, Secretary. A. B. Moore."

The Columbia River Cranberry Association is a corporation engaged in the same business as that of the Washington Cranberry Association, as is also the Oregon Cranberry Association, a corporation. After the contract above referred to was made, the three corporations named entered into a contract whereby there was created what is referred to as the Pacific Cranberry Exchange, and appointed one L. S. Martin as the exclusive agent for the sale of all berries controlled by the three corporations. The cranberry exchange was composed of three members, a representative of each of the corporations. In the contract they are referred to as "the associations." It is provided that the cranberries shall be delivered f. o. b. cars at points designated by Martin, and that he agrees that

"he will immediately upon acceptance by his representative of cranberries, upon surrender of bill of lading, advance to the Pacific Cranberry Exchange, the agent of said associations, the sum of $2.00 per box of the size heretofore indicated, said bill of lading hereinabove mentioned shall be forwarded by said Pacific Cranberry Exchange, with draft attached to the Bank of California, of Portland, Oregon.

"The representatives of the said L. S. Martin shall have access to the warehouses of the associations and to the warehouses or store-rooms of the individual

members of the associations, to determine the quantity, conditions and quality of berries available at any given time. A representative of the Pacific Cranberry Exchange may at any reasonable time, have access to the books of the said L. S. Martin, at his offices in Portland, Oregon, for the purpose of checking sales and returns made by the said L. S. Martin.

"All returns shall be made to the Pacific Cranberry Exchange, the agent of said associations, on or before thirty days after the expiration of the month in which the berries are shipped to the said L. S. Martin.

"The associations agree that the said L. S. Martin shall receive a five per cent commission on all gross sales of all berries sold by it to jobbers in the states of Oregon and Washington, and six and one-half per cent on all other berries sold by the said L. S. Martin and the said L. S. Martin hereby agrees to accept said commissions in full settlement for his services in the sale of said berries.

"The said L. S. Martin shall only be liable for actual negligence on his part, and no liability shall be attached to him by reason of damages caused to the associations or to individual members thereof, by strikes, embargo, shortage of equipment, or any other cause beyond the control of said L. S. Martin by use of reasonable diligence.

"It is understood and agreed that the fullest cooperation of the associations and of the Pacific Cranberry Exchange will be extended to the said L. S. Martin in the handling and marketing of said berries.

"All sales shall be made at the market price, or at a price to be mutually agreed upon by said L. S. Martin and the Pacific Cranberry Exchange."

In Pacific county there were approximately eighty cranberry growers, and sixty of these had contracts with the respondent similar to the one set out. After the contract was entered into and during the year 1920, the appellant produced 1,300 boxes of cranberries, and five hundred of these were sold to parties other than the contract provided. As above stated,

this action was brought to restrain the appellant from selling cranberries to parties other than the respondent. The appellant makes three principal contentions. First, that the contract is void at common law as against public policy; second, that it is contrary to art. 12, § 22, of the constitution of this state, which is a section covering the matter of monopolies and trusts; and third, that the contract is void as being in contravention of the Sherman Anti-Trust Act passed by the Federal Congress on July 2, 1890 (U. S. Stat. at Large, vol. 26, p. 209, ch. 647).

To determine whether the contract is void for any of the reasons stated it is necessary to read the contract in connection with the procedure under it and the result which was produced thereby. The appellant contends that a monopoly is created, trade restrained, the output of cranberries limited and prices are controlled. It may be admitted that, if this is the effect of the contract and the business transacted under it, it would be void and unenforcible. The contract required the appellant to deliver all cranberries grown by him to the respondent for marketing until it should be terminated in accordance with the terms therein stated. The purposes of the contract, among others as stated therein, are to maintain to its greatest efficiency the association, as well as the central selling agency with which it is now or may be hereafter affiliated. The corporation is made the exclusive sales agent for the growers' fruit crop. The evidence shows that the purpose of entering into the contracts, of which the one above set out is one, was as follows:

Before the corporation was organized, certain growers at times put upon the market cranberries of an inferior grade and this caused merchants to refuse to buy berries from Pacific county. In order to

avoid this situation it was necessary to enter upon an advertising campaign to stimulate the use of berries and to cause berries of uniform grade to be placed upon the market. Another purpose was to secure a uniform price and avoid flooding any one market, as would be done if a large quantity of berries was shipped to a particular point at one time. Under the selling agency, the quantity of berries going to any one market was regulated, and in this way tended to maintain, or "hold up," as the evidence shows, the price. It was also for the purpose of enabling all growers to receive for their berries a uniform price. There is nothing in the contract or the operation under it that limits the production or controls the price in any particular locality. While the selling agency was located in Portland, the berries handled through the cranberry exchange representing the three corporations came in direct competition with eastern berries as well as with the berries of independent growers. The cranberry association controlled about two per cent of the berries produced in the United States, the independent growers, thirty-two per cent, and the American Cranberry Exchange, which was an organization operating in New York and Chicago, sixty-five per cent. The berries sold through the selling agency in Portland created by the three corporations sold at the market price and the berries were shipped by the corporations to such points as Martin, the selling agent, designated. The evidence is that the price of the berries in the various markets was fixed and controlled by the American Cranberry Exchange. If the Pacific berries could not be sold for the same price as the eastern berries the selling agent, after conferring with the members of the exchange, would sell for a lesser price. The contract and the delivery of berries

under it not resulting in limiting the production, controlling or fixing of the price in any particular market, cannot be said to be void as against public policy, or under the constitutional provision above referred to, or under the anti-trust act.

The question as to when a contract is a restraint of trade was fully discussed in *Fisher Flouring Mills Co. v. Swanson*, 76 Wash. 649, 137 Pac. 144, 51 L. R. A. (N. S.) 522. It was there recognized that it was difficult to state the rule which would cover all cases, and that the circumstances of each particular case and the situation of the parties, in addition to the effect on the public welfare, must be considered in determining the validity of a contract. It was there said:

"The fact that the circumstances of each particular case and the situation of the parties, in addition to the effect on the public welfare must be considered, and that of all circumstances, the dominant consideration is the welfare of the public, makes it difficult to state by definition, except in the broadest way, any rule for determining the validity of any such contract as that here involved. Perhaps the following is as near a complete definition as we can formulate from the adjudicated cases: Contracts fixing prices as incidental to some main contract, and involving less than a controlling part of a given commodity in a given market, not proceeding from, nor tending to create or to maintain a monopoly, will be sustained when the restriction is, under the circumstances of the particular case, reasonable in reference to the interests of the parties, and reasonable in reference to the interests of the public; that is to say, when the price fixed is fairly necessary to the protection of the covenantee, and fair to the public in that it furnishes only a reasonable profit to the contracting parties. Lacking these elements, such contracts are invalid as contrary to public policy."

In *Finck v. Schneider Granite Co.*, 187 Mo. 244, 86 S. W. 213, 106 Am. St. 452, it was stated that, in de-

termining the validity at common law of a combination claiming to be in restraint of trade, the true test is "whether they afford fair and just protection to the parties thereto or whether they are so broad as to interfere with the interests of the public." In *United States v. Addyston Pipe & Steel Co.*, 85 Fed. 271, in determining whether a contract was void at common law or under the anti-trust act, the test applied was whether there was a reasonable restraint of trade,

"considering whether the restraint is such only as a broad and fair protection of the interests of the public in favor of whom it is given and not so large as to interfere with the interests of the party. Whatever restraint is larger than the necessary protection of the public requires can be of no benefit to either. It can only be oppressive which is, in the eye of the law, unreasonable. Whatever is injurious to the interests of the public is void on the ground of public policy."

A large number of cases are cited in the briefs where contracts have been held void as being a restraint of trade, but it does not seem necessary to review these in detail. So far as we are informed, no case holds that a contract is void which does not limit the production or control or fix the price in a particular market. As above pointed out, the contract here under consideration, considered in connection with the evidence showing the operation under it, neither limits the production or fixes the price. The cases of *Santa Clara Valley Mill & Lumber Co. v. Hays*, 76 Cal. 387, 18 Pac. 391, 9 Am. St. 211, and *Cravens v. Carter-Crume Co.*, 92 Fed. 479, are cases where the combinations there in question limited the production and increased the price, and are therefore not in point in this case.

The next question which arises is whether the respondent is entitled to injunctive relief. The appellant contends that there should be recourse only for dam-

ages. The purpose of the action was not to enforce specific performance directly, but to accomplish that indirect result by restraining the appellant from selling berries to any other person than the respondent. It will be admitted that if the contract, by its terms, shows an intent to rely upon damages, or if there is an adequate remedy at law, injunctive relief cannot be had. The contract provides that, to accomplish its purpose, it is necessary that the appellant strictly and fully comply with and perform the stipulations and agreements on his part. While the contract provides for damages, it also recites that it is impossible to fix and estimate the actual damage sustained in event the grower shall fail to abide by the agreement, and the damages are only estimated. The contract, we think, fails to show an intent of the parties that, in the event of breach, the only recourse would be an action for damages. There was not an adequate remedy at law because an action for damages would not be sufficient to protect the respondent and the other growers which it represented in accomplishing the purposes of the undertaking. Those purposes are fully set out above and need not here be repeated. The fact that the contract is one which could not be specifically enforced in a court of equity by reason of the fact that it would require the performance of continuous duties does not prevent the court from entering an injunction restraining its breach, which indirectly accomplishes the same result. *Western Union Telegraph Co. v. Union Pacific R. Co.,* 3 Fed. 423; *Chicago & Alton R. Co. v. New York, L. E. & W. R. Co.,* 24 Fed. 516; *American Electrical Works v. Varley Duplex Marget Co.,* 26 R. I. 295, 58 Atl. 977. In the case last cited, upon this question it was said:

"The respondent, however, contends that the injunction should not be granted, because it would result

in compelling indirectly a specific performance of the contract in the case, where the court would not directly order such performance.

"We do not think that this contention is in accord with the best and most modern authorities. The following cases, amongst others which might be cited, sustain the complainant's position. (Citing numerous authorities.)

"A very clear and well-considered statement of the law upon the question under consideration according to the most modern authorities is to be found in the opinion of Judge Lowell in *Singer Sewing Machine Co. v. Union But. & Em. Co., supra,* in which he says: 'The two points of law are not without difficulty. The relief asked is specific performance and injunction. It is argued with great ability by the defendants, that the complainant is not entitled to specific performance, and that, therefore, it can not have an injunction which is merely auxiliary. Granting the premises, I am not prepared to concede the conclusion. If the court can not order a contract for the making of button-hole machines to be specifically performed by reason of the impossibility of superintending the details of such a business, it does not follow that the bill may not be retained as an injunction bill. It was formerly thought that an injunction would not be granted to restrain the breach of any contract unless the contract were of · such a character that the court could fully enforce the performance of it on both sides.' Judge Lowell here examines the authorities and the development of the modern rule, and then proceeds: 'I think the fair result of the later cases may be thus expressed: If the case is one in which the negative remedy of injunction will do substantial justice between the parties by obliging the defendant either to carry out his contract or lose all benefit of the breach, and the remedy at law is inadequate and there is no reason of policy against it, the court will interfere to restrain conduct which is contrary to the contract, although it may be unable to enforce a specific performance of it.' "

The fact that the contract provides that, in case of breach, the damage shall be as there admitted, does not of itself conclusively establish that the parties contemplated that, upon the breach thereof, damages would be an adequate remedy. It is a question of intention in each case, to be deduced from the whole instrument and the circumstances, and if it appear that the performance of the covenant was intended, and not merely the payment of damages in case of breach, the contract will be enforced. *Diamond Match Co. v. Roeber,* 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; *Harris v. Theus,* 149 Ala. 133, 43 South. 131, 123 Am. St. 17, 10 L. R. A. (N. S.) 204; *Wilkinson v. Colley,* 164 Pa. St. 35, 30 Atl. 286, 26 L. R. A. 114; *Heinz v. Roberts,* 135 Iowa 748, 110 N. W. 1034; *Ropes v. Upton,* 125 Mass. 258; *Zimmermann v. Gerzog,* 13 App. Div. 210, 43 N. Y. Supp. 339.

Considering the terms of the contract and all the attendant circumstances, we are of the opinion that it was not intended by the parties thereto that the damages claimed therein should be the only price of the appellant's breach of the agreement, and that the remedy at law would not be adequate.

The judgment will be affirmed.

PARKER, C. J., MITCHELL, TOLMAN, and BRIDGES, JJ., concur.

ON REHEARING.

[*En Banc.*  February 21, 1922.]

PER CURIAM.—This cause was reargued before the court *En Banc* on January 25, 1922. Deeming ourselves fully advised in the premises, and a majority of the judges being of the opinion that the cause was correctly disposed of by the decision of Department Two, the judgment is affirmed for the reasons therein stated and as therein directed.

MACKINTOSH, J. (dissenting)—For the reason that I think the opinion in this case states an unsound principle of law, I am forced to dissent.

Upon the question whether the contract under consideration is void as against public policy, or the provisions of the state constitution in regard to monopoly and trusts, or under the Sherman Anti-Trust Act, there may be a very serious question, and that the contract should be held void there is supporting argument in the recent decisions of the United States supreme court in the cases of *American Column & Lumber Co. v. United States,* U. S. Adv. Ops. 1921-22, p. 159, decided on December 19, 1921, and *Federal Trade Commission v. Beech Nut Packing Co.,* U. S. Adv. Ops. 1921-22, p. 178, decided January 3, 1922. But I am not so much concerned with that question as with the other question decided in this case, and am willing to assume that the contract is a valid and enforcible one.

It is elementary, and will be conceded to be the general rule by every one hearing it stated, that courts of equity will not enjoin the breach of contracts. Where the contracts provide for liquidated damages, or, if not so providing, the damages can be ascertained which will compensate for the breach, the party not in fault will be left to sue for such damages, or he may compel specific performance. Where a contract provides for liquidated damages, specific performance is not available in some jurisdictions, but after a consideration of this question with our recent case of *Asia Investment Company v. Levin,* decided February 23, 1922, to be reported in 118 Washington Reports (204 Pac. 808), we are committed to what seems to us to be the better rule; that, although the contract agrees upon liquidated damages, still, upon a breach by one party, the other party has the option of suing for the recovery of such damages, or in equity to enforce specific performance. But there are certain classes of cases in which courts of equity will not order specific perform-

ance, one of those classes being where the equity court would be compelled to take over and conduct the business, or to engage in such constant supervision of the execution of the details of the contract as to be a burden upon the court. In those cases the party to the contract against whom the breach has occurred is relegated to his action at law for damages, and it is to avoid such action that injunctions are sought, which will indirectly have the effect of, at least, partially compelling performance.

But courts of equity will not beat around the bush in this manner unless the law action for damages is not sufficient, and they hold that, where the contract provides for liquidated damages, such damages are sufficient. Of course, within this rule fall those cases where the party committing the breach is insolvent, it being apparent that an action at law against him for breach of his contract would furnish inadequate relief; so, in insolvency cases, we find courts of equity enjoining the breach of contracts where the court cannot order specific performance.

No injunction should be allowed to prevent the breach of the contract before us. The contract itself, after pledging the grower to ''strictly and fully comply with and perform the stipulations and agreements on his part herein to be performed,'' states that it is ''hereby further and mutually agreed that, inasmuch as it is impossible at this time to fix and estimate the actual damage which will be sustained by the association in the event that the grower shall fail to abide by his agreement to market his said fruit through the association, such damages are hereby estimated and agreed upon as one dollar per box for each box of cranberries grown or sold by the grower . . . .''

No language more explicit or definite could have been used to create a stipulation for liquidated dam-

ages. The provision meets all of the requirements that have been set down by this court as constituting a provision in a contract one for liquidated damages. We therefore have a case where the parties themselves have left nothing to be decided in an action at law against the grower, except the question of whether he has or has not breached his contract. The damages· flowing from such a breach, if it is established, have been absolutely determined, and the courts are uniform in holding that such a determination by the parties constitutes adequate compensation for the breach. In this case, however, the court, in substance, says that the provision for liquidated damages is without effect, and that a breach of the contract will be enjoined, although the parties themselves have determined upon the measure of damages.

This court should not substitute its judgment as to whether damages are adequate or inadequate, contrary to the judgment of the parties to the contract themselves, who have formally agreed that damages in a certain amount are adequate, such agreement as to the amount of damages having been made in full view of all the purposes which the contract was seeking to accomplish, and the indefiniteness of the amount of damages a breach might occasion.

When the parties have agreed on the amount, it will not do for this court to say that it is inadequate. No stipulation for liquidated damages is set aside for that reason, but may be set aside for the reason that they are so excessive as to amount to a penalty. The parties knew, as well as this court, "that it is impossible to fix and estimate the actual damage sustained, in event the grower shall fail to abide by the agreement and the damages are only estimated." Yet this is the situation in nearly all cases where liquidated

damages are agreed upon. The parties knew, as well as this court, that they desired "to protect the respondent, and the other growers which it represented, in accomplishing the purposes of the undertaking," for in the contract they said, "the grower fully understands that the purposes, among others, of this agreement is to maintain and increase to its greatest efficiency the association  .  .  .  . and to accomplish this  .  .  .  . he agrees that he will not sell  .  . .  .  his fruit to any other firm, etc.  .  .  . and it is .  .  . agreed that, inasmuch as it is impossible at this time to fix and estimate the *actual damage*  .  .  . *such damages* are estimated and *agreed upon* as $1 per box  .  .  . which sum shall be allowed in any action brought  .  .  . to recover damages for the breach of this agreement." What did they mean? Were they so incompetent to contract for themselves, and so unfamiliar with the subject-matter with which they were dealing, and so unskilled in expressing their ideas that this court will say their language is futile and rewrite the contract as it thinks it should have been? To do so is to violate too many sacred rules of contracts.

The decision is based upon the case of *Harris v. Theus,* 149 Ala. 133, 43 South. 131, 123 Am. St. 17, 10 L. R. A. (N. S.) 204, and others noted in connection with that case in 10 L. R. A. (N. S.) 204. It seems to me that those cases can be clearly distinguished from the case at bar. The majority of them are cases in which either a professional or business man has sold out his practice or business, and has agreed with the purchaser not to resume business or practice in competition with the purchaser for a certain definite period of time. In such cases the courts have enjoined the seller from committing a breach of his contract.

The exception to the rule in that class of cases has always been recognized as sound. The principal case

of *Harris v. Theus, supra,* was a case where the seller of certain lands agreed not to engage in a certain business within ten miles of the place, so long as the purchaser should be engaged in that business.

In the case of *Diamond Match Co. v. Roeber,* 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464, a contract was made by the seller with the purchaser that he would not, within any time during the next ninety-nine years, engage in the manufacture of friction matches, except in certain specific territories, and breach by the seller was enjoined. The court said:

"It is, of course, competent for parties to a covenant to agree that a fixed sum shall be paid in case of a breach by the party in default, and that this should be the exclusive remedy. The intention in that case would be manifest that the payment of the penalty should be the price of non-performance, and to be accepted by the covenantee in lieu of performance. . . . It is a question of intention, to be deduced from the whole instrument and the circumstances; and if it appear that the performance of the covenant was intended, and not merely the payment of damages in case of a breach, the covenant will be enforced."

*Ropes v. Upton,* 125 Mass. 258, was a case where the parties were partners and one sold to another his interest and good will, and agreed not to carry on business in the same place, and on attempting to do so was enjoined.

*Heinz v. Roberts,* 135 Iowa 748, 110 N. W. 1034, was an agreement by an attorney who sold his practice and represented that he would not practice his profession within certain territory. Injunction against the breach was granted.

*Wilkinson v. Colley,* 164 Pa. St. 35, 30 Atl. 286, 26 L. R. A. 114, was a case of a physician who sold out his practice and agreed not to return thereto for a period of ten years. In less than four years he resumed prac-

tice in the same community where he had originally practiced, and an injunction was granted against this conduct.

In *Zimmermann v. Gerzog,* 13 App. Div. 210, 43 N. Y. Supp. 339, the vendor of a business agreed that he would not enter a similar business for a given period of time. The breach of this covenant was enjoined.

The other cases cited in the majority opinion are ones where there had been no provision for liquidated damages, or where the remedy at law was inadequate.

The case of *American Electrical Works v. Varley Duplex Marget Co.,* 26 R. I. 295, 58 Atl. 977, presented a situation where the respondent had contracted to put machinery in the appellant's factory, to be used for their joint benefit, and the complainant, in reliance on its right to use the machinery, had, in addition to expending money for material, entered into contracts to supply large quantities of the product to be manufactured thereby. The court held that damage for failure to perform was not susceptible of computation, and defendant should be enjoined from removing the machinery, although the contract between the parties could not be enforced by specific performance.

*Chicago & Alton R. Co. v. New York, L. E. etc. Co.,* 24 Fed. 516, was a case where an injunction was granted to restrain breaches of negative covenants, which resulted in compelling the observance of affirmative covenants, the court saying, however, that equity would only interfere when the recovery of damages at law would inadequately redress the impending injury.

The case of *Western Union Tel. Co. v. Union Pacific R. Co.,* 3 Fed. 423, enjoined the violation of a contract which called for the performance of continuous duties involving the exercise of skill, personal labor and cultivated judgment, but for the reason that damages could not adequately be arrived at.

From the case of *American Electrical Works v. Varley Duplex Marget Co., supra,* an extensive quotation is contained in the opinion of the court, which quotation is composed largely of a quotation from the opinion of Judge Lowell in *Singer Sewing-Machine Co. v. Union Button-Hole etc. Co.,* Fed. Cas. No. 12,904. The court, in referring to the opinion of Judge Lowell, says, as appears in the quotation, "the question under consideration according to the most modern authorities is found in the opinion of Judge Lowell." The opinion of Judge Lowell was rendered in September, 1873, so that it cannot be said to be a review of extremely "modern authorities." Moreover, Judge Lowell himself, in the case of *Bickford v. Davis,* 11 Fed. 549, decided in April, 1882, referred to his former opinion in the *Singer Sewing-Machine* case, *supra,* recognizing it as being contrary to the general rule, saying, "as a general rule a court of equity will not order such a contract to be specifically performed . . . There are a few exceptions to this rule, as I said in the *Singer Sewing Machine* case . . . still, it is the general rule."

Passing now to a review of the cases which, to my mind, have squarely considered the question before us, and attempting to confine the consideration of them within reasonable limits, and on that account taking principally those from the United States supreme court, we find the following: In *Sun Printing etc. Ass'n v. Moore,* 183 U. S. 642, that court said:

"The naming of a stipulated sum to be paid for the non-performance of a contract is conclusive on the parties in the absence of a fraud or mutual mistake. Parties may, in a case where the damages are of an uncertain nature, estimate and agree upon the measure of damages which may be sustained from the breach of the agreement."

In that case, Chief Justice White, in a most elaborate opinion, reviewed the entire question of liquidated damages, and shows that, where the parties have made certain what otherwise would be uncertain, by agreeing upon the amount of damages, such agreement is binding upon them.

In *Javierre v. Central Altagracia*, 217 U. S. 502, the supreme court of the United States held: Injunctive relief will not be granted in equity against disposal of sugar cane elsewhere than at the sugar factory designated in the contract with the growers, as a suit for damages will afford adequate relief.

The court saying:

"The doubt as to the relief granted below is more serious and in the opinion of the majority of the court must prevail. According to that opinion a suit for damages would have given adequate relief and therefore the appellee should have been confined to its remedy at law. Again, the court would not undertake to decree specific performance and to require and to supervise the raising of the crop and the grinding of the sugar for even the now remaining period of the decree. There is a certain anomaly in granting the half way relief of an injunction against disposing of the crops elsewhere when the court is not prepared to enforce the performance to accomplish which indirectly is the only object of the negative decree. There is too a want of mutuality in the remedy, whatever that objection may amount to, as it is hard to see how an injunction could have been granted against the appellee had the case been reversed."

In *Marble Co. v. Ripley*, 77 U. S. 339, the same court held in effect that there is a presumption that the breach of an agreement to transfer personal property can be relieved by pecuniary compensation, and where the breach of the contract to transfer personal prop-

erty can thus be compensated, an injunction cannot be granted to prevent the breach.

In *Burdon Cent. Sugar Ref. Co. v. Leverich,* 37 Fed. 67, it was held:

"The breach of a contract by which defendant agreed to have her whole crop of sugar for two years refined at plaintiff's refinery may be adequately compensated by damages at law, and equity will not enjoin a violation of the agreement."

The court, in *Emerzian v. Asato,* 23 Cal. App. 251, 137 Pac. 1072, held that: On defendant's breach of a contract to care for and sell to plaintiff orange trees, plaintiff could not enjoin defendant from disposing of the same to others.

In *New Hartford Canning Co. v. Bulifant,* 78 App. Div. 6, 78 N. Y. Supp. 951, the court stated that one who agreed to sell and deliver corn cannot be enjoined from selling to another, although the purchaser alleged irreparable injury, the facts simply showing liability in damages for failure to deliver it, which could be recovered in an action at law.

See, also, to the same general effect: *Electric Lighting Co. v. Mobile etc. R. Co.,* 109 Ala. 190, 19 South. 721, 55 Am. St. 927; *Starnes & Mosley v. Newson,* 1 Tenn. Ch. 239; *Bomer Bros. v. Canaday,* 79 Miss. 222, 30 South. 638, 89 Am. St. 593, 55 L. R. A. 328; *General Elec. Co. v. Westinghouse Elec. & Mfg. Co.,* 144 Fed. 458; *Berliner Gramophone Co. v. Seaman,* 110 Fed. 30; *Grape Creek Coal Co. v. Spellman,* 39 Ill. App. 630; *Lone Star Salt Co. v. Texas etc. R. Co.,* 99 Tex. 434, 90 S. W. 863; *Taussig v. Corbin,* 142 Fed. 660; *Hair Co. v. Huckins,* 56 Fed. 366.

Judge Cushman, in *Blue Point Oyster Co. v. Haagenson,* 209 Fed. 278, held that a court of equity will not interfere in a contract by which the owners of oyster beds agreed to sell their entire product for a

term of years, at stated prices per sack, with a provision that they would sell to no one else, the contract specifying the quantity and quality of each sack, specific performance being denied for the reason that the character of the case was such that continuous supervision of the court would be required during the term of the contract, and injunction being refused for the reason that complainant had an adequate remedy at law, the oysters which were the subject of the contract having an ascertainable market value.  Judge Cushman cites over one hundred authorities in that opinion.

Last, but not least, we trust, this court itself has decided this question squarely in the case of *Gardiner v. Gyorog,* 109 Wash. 660, 187 Pac. 318.  In that case a contract was considered for the sale of three tons of Cascara bark, and also all bark defendant "shall peel or have for sale during the season."  The action was brought to enjoin the defendant from selling the bark to any one other than the plaintiff.  The court said:

"The evidence shows that the appellant could have purchased this bark at an advance of probably one cent per pound over the contract price.  In other words, the appellant in an action at law for damages, could recover one cent per pound, or $6.75. The appellant insists that respondent is insolvent  .  .  .  [we notice in the instant case there is no suggestion or mention of any kind of insolvency] but we think it is not plain, even upon these facts that the respondent could not respond to whatever damages the appellant might recover in an action at law for damages.  'The general principle by reason of which a litigant is remitted to a court of law if he has an adequate and efficient remedy in that tribunal, is also the test of his right to an injunction restraining the breach of a contract.  The court must be satisfied of the inadequacy of the legal remedy before it will grant the desired relief.  .  .  .  It seems also that the contract must be one on which an action

at law could be maintained.  .  .  .  ' The court be-low was not satisfied of the inadequacy of the legal remedy, and we are of the opinion was amply justified by the proof upon this question."

To my mind, this case cannot be distinguished from the case at bar, and the opinion of the majority does not attempt to do so, for it does not even refer to it.

This dissent has already extended itself possibly un-necessarily, for the reason that it is only expressing an idea of what the law ought to be, rather than what it is, in view of the decision of the majority of the court; but to summarize the situation, it would appear that the law ought to be that, where parties have agreed in a contract upon liquidated damages, and the contract is of such a nature that specific performance cannot be decreed, for the reason that such decree would result in the continuous supervision of the court, or in the constant invocation of the court's orders to complete the performance, the courts will say that there is an adequate remedy at law, and that the extraordinary remedy of injunction will not be applied; that the in-direct specific performance of contracts will not be compelled by means of injunction where the law court can afford adequate relief.   To this rule there only seems to be the exception, which has been noted when referring to the authorities relied on by the majority opinion, of contracts where the seller has agreed not to engage in business in competition with the buyer, and possibly, save for a few sporadic exceptions not heretofore noted, the rule I contend for is supported by all the authorities.   For these reasons, I dissent.

HOLCOMB, J. (concurring)—I concur.   This opinion should be the prevailing one.

HOVEY, J., concurs with MACKINTOSH, J.