[Civ. No. 3212.  Third Appellate District.—November 14, 1927.]

CALIFORNIA BEAN GROWERS' ASSOCIATION (a Corporation), Appellant, v. FRANK S. SANDERS, Respondent.

Sapiro & Hayes for Appellant.

Dennett & Zion for Respondent.

BURROUGHS, J., *pro tem.*—The plaintiff is a nonprofit marketing association without capital stock and was organized by a large number of bean growers to co-operate in the business of growing and marketing beans. The defendant is one of its members. On June 14, 1921, plaintiff and defendant entered into an agreement whereby plaintiff agreed to market and defendant agreed to consign and deliver to plaintiff, as his agent, all of the beans produced by him except those which the plaintiff might release in writing for personal use or garden seed varieties. The agreement covered a series of years commencing with and

including the year 1921. The agreement is very full and complete and sets forth the obligations of the respective parties in minute detail. One of its provisions is for liquidated damages in case the defendant shall fail to deliver to the plaintiff his crop of beans, and is set forth in the following language: "Inasmuch as it is now and ever will be, impracticable and extremely difficult to determine the actual damage resulting to the Association should the grower fail to so consign and deliver their beans, the grower hereby agrees to pay to the Association one cent ($.01) for each pound of beans produced or acquired by or for him which he has failed to deliver to the Association in accordance with the terms hereof, as liquidated damages for the breach of this agreement, all parties agreeing that this agreement is one of a series dependent for its value upon the adherence of each and all of the contracting parties to each and all of the said contracts."

It is also provided in said contract, "If the Association brings any action to enforce any provision hereof or to secure specific performance hereof or to collect damages of any kind for any breach hereof, the grower agrees to pay to the Association any reasonable attorney's fees expended or incurred by it in any such proceeding, together with any other costs incurred in such action."

The complaint is based upon an alleged violation of defendant's obligation to deliver to the plaintiff his 1921 bean crop and also for an attorney fee for the prosecution of this action. The general features of the plaintiff organization and the agreements which it makes with its members are similar to those considered in *Poultry Producers, etc., v. Barlow*, 189 Cal. 278 [208 Pac. 93], *California Canning Peach Growers Assn. v. Downey*, 76 Cal. App. 1 [243 Pac. 679], *Poultry Producers, etc., v. Murphy*, 64 Cal. App. 450 [221 Pac. 962]; *Anaheim Citrus Fruit Assn. v. Yeoman*, 51 Cal. App. 759 [197 Pac. 959], and *California Bean Growers Assn. v. Rindge L. & N. Co.*, 199 Cal. 168, 171 [47 A. L. R. 904, 248 Pac. 658]. The foregoing cases hold that a contract for liquidated damages such as the one here sued upon is valid and enforceable and falls within the rule of section 1671 of the Civil Code, which provides, "The parties to a contract may agree therein upon an amount which shall be presumed to

be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.''

In the case of *Anaheim Citrus Fruit Assn.* v. *Yeoman, supra,* it is held: ''The association was organized for the purpose of the better handling of citrus fruits through the co-operative and joint efforts of its members. From the nature of the organization and the statement of its purposes as found in its articles and by-laws, it can be fairly and reasonably inferred that by the co-operation of its members, mutual advantages would accrue to all through greater economy in handling and shipping and the securing of more advantageous marketing facilities. These results would be dependent directly upon the performance by the members of their agreement to deliver their fruit into the hands of the association for the purposes declared. Defendant sought to show at the trial that the damage which would accrue to the association by reason of any of its members failing or refusing to market their fruit through the association could be easily and exactly ascertained, and that such damage would consist wholly of a proportionate amount of overhead operating cost. By the line of questioning pursued it was made clear that the association would suffer an actual monetary loss by reason of the failure of defendant to deliver his fruit at the association packing house for market, as he had agreed to do, but in the very nature of the case we do not think that such damage should be the only damage considered to have been suffered by the plaintiff. Other elements have already been suggested. The existence and life of the association itself depended upon its being furnished fruit to dispose of in the public market. A reduction in the amount of fruit so handled would not only tend to increase the overhead cost to the nontransgressing members, but, we may assume, to some extent affect the prestige and standing of the association as a marketing concern. . . . Enough has been said, we think, to show that the case falls within the class as to which the law permits damages to be liquidated by contract in advance of their occurrence. It follows as a necessary conclusion that plaintiff was entitled to recover the exact amount fixed in its contract as

the sum per box which defendant should pay by reason of his failure to market this fruit in the manner agreed."

These authorities are conclusive that the contract here sued upon is enforceable.

The cause was tried by the court and judgment entered in favor of the defendant and plaintiff appeals.

The cause has been submitted to this court by stipulation of the parties upon the appellant's opening brief, there being no appearance by the respondent either through the filing of a brief or oral argument.

The court made the following findings adverse to the plaintiff:

"Second: . . . that it is not true that the said plaintiff did, in the handling of its business, eliminate any waste, or prevent any speculation, or give any benefits of any economies, or that there were any economies, or any stabilization in the collective or co-operative handling, or marketing or distribution of beans.

"Fourth: . . . That it is not true that said plaintiff was damaged as the result of the acts of the said defendant in selling said beans to persons other than the plaintiff, and that said plaintiff suffered no damage on account of the said acts of the said defendant.

"Fifth: That it is not true that the plaintiff was at all times ready, or willing, or able, to perform all of the terms or conditions, covenants, or terms of said agreement.

"Sixth: That it is not true that by the defendant's failure to deliver beans under said agreement, that the plaintiff was unable to secure the amount of beans it had contracted to sell, or that by reason of such act of the defendant, that the plaintiff was unable to prevent manipulation of the price of beans by speculators.

"Seventh: That it is not true that because of the defendant's failure to deliver said beans to the plaintiff, that the *pro rata* cost of marketing of the members of plaintiff who delivered beans in accordance with their contract was raised.

"Eighth: That it is not true that the cost of handling beans was raised by defendant's failure to deliver.

"Ninth: That it is not true that the plaintiff was damaged in an incalculable amount, or any amount, by reason of the failure of the defendant to deliver said beans.

"Eleventh: . . . but it is not true that by reason of the failure of the defendant to deliver said beans, that the said plaintiff was unable to fulfill any contract made by it in connection with the sale of any beans by it to other persons.

"Twelfth: That it is not true that plaintiff is entitled to attorney's fees in this action.

"Thirteenth: That the defendant never signed any by-laws as a member of said association, but that plaintiff has adopted by-laws as provided by law."

The pleadings admit that the defendant raised twenty-three thousand pounds of black-eye beans during the season of 1921, which were subject to the terms of the contract and which were sold to other parties. C. L. Danly, secretary-treasurer of the plaintiff, testified that during the year 1921 he was employed by the plaintiff and ever since said time has been in its employ and the custodian of the records of the plaintiff corporation. He produced the stub-book of certificates of membership which shows that on June 14, 1921, certificate of membership No. 1712 was issued to the defendant. The witness testified that the certificate was signed by the secretary and forwarded to defendant. He further testified that Sanders did not deliver any beans of the 1921 crop to the association. That the association during 1921 had an office in San Francisco with a sales department, a warehouse department and an accounting department. That it had arrangements with about three hundred brokers throughout the United States who assisted in disposing of its crops and it had arrangements with warehouses to receive and clean beans. It also had clerks in its various departments and department head managers, and it had prepared all the necessary paper work, printed forms, and reports in expectation of handling all the beans of its members who had signed contracts. The form of contract signed by Mr. Sanders was a standard form signed by all the members. He further testified that if Mr. Sanders had delivered his twenty-three thousand pounds of beans to the association they could have been handled without any additional overhead expense or cost and that the portion of overhead that should have been borne by Sanders was paid by those members who delivered their beans to the association. That the

failure of Sanders to deliver the beans caused the unit cost of operating the association to increase. That the plaintiff was able and willing to receive the beans and made demand for them, and was ready to market them in accordance with the terms of the general contract. That the association receives beans from its members only and that if a member fails to deliver it affects the trade standing and prestige of the company. That when contracts were made with the trade throughout the United States they were informed of the nature of the association and the source from which the beans were obtained. He further testified that they relied upon the beans of its members and if they failed to deliver, the association was unable to carry out its contracts and lost prestige with the trade. That from the 1921 crop the association contracted to deliver black-eye beans at a specific time and were unable to do so because the members did not deliver, and the association got in difficulties with the trade. That if the defendant Sanders had delivered his beans in time the association would have been in a position to have filled some of its contracts. He further testified that the breach of a contract by one member caused others to breach and thus created dissatisfaction and demoralization in the association. The witness further stated that he did not know just what effect Sanders' failure to deliver his bean crop had upon other members, but there were other members at that time who did not deliver their crops. Further, that by Sanders' failure to deliver his bean crop to the association said bean crop came into competition with the beans of the association and prevented the association from maintaining a stable market and stable price.

It was stipulated that if Robert Frazier, a grower member and director of the association and for a period of two years its general manager, were present, his evidence would be the same as that of Mr. Danly in reference to the effect of a breach of the agreement on the part of a grower member of the association.

It was stipulated that should the plaintiff recover a judgment the amount of the attorney fee should be fixed by the court.

The foregoing is all of the evidence bearing upon the findings of the court hereinbefore set out and as said

findings are contrary thereto, proper findings may be drawn from the evidence, and a correct judgment entered thereon, and this cause terminated without further litigation by this court exercising the authority conferred by section 956a of the Code of Civil Procedure (Stats. 1927, p. 583).

It is therefore ordered that the second finding be amended by striking therefrom the following: "that it is not true that the said plaintiff did, in the handling of its business eliminate any waste or prevent any speculation or give any benefits of any economies, or that there were any economies or any stabilization in the collective or co-operative handling or marketing or distribution of beans."

It is further ordered that finding four be amended to read as follows: "Fourth: That in the year 1921 defendant produced twenty-three thousand pounds of beans, and that the said beans were not delivered to the said plaintiff, and were not used by the said defendant for seed nor released by the association for personal use. That demand was made upon the said defendant by said plaintiff to deliver said beans, but that said defendant did not deliver any of said beans produced by him in the year 1921 and that said defendant sold said beans to persons other than the plaintiff. That it is true that said plaintiff was damaged as a result of the acts of said defendant in selling said beans to persons other than the plaintiff and that said plaintiff suffered damage on account of said acts of said defendant."

It is further ordered that finding number five be amended to read as follows: "Fifth: That it is true that the plaintiff was at all times ready, willing and able to perform all of the terms or conditions, covenants, and terms of said agreement."

It is further ordered that finding number six be amended to read as follows: "Sixth: That it is true that by the defendant's failure to deliver beans under said agreement, the plaintiff was unable to secure the amount of beans it had contracted to sell, and that by reason of such act of the defendant, the plaintiff was unable to prevent manipulation of the price of beans by speculators."

It is further ordered that finding number seven be amended to read as follows: "Seventh: That it is true that because of the defendant's failure to deliver said beans

to the plaintiff, the *pro rata* cost of marketing of the members of plaintiff who delivered beans in accordance with their contract, was raised."

It is further ordered that finding number eight be amended to read as follows: "Eighth: That it is true that the cost of handling beans was raised by defendant's failure to deliver."

It is further ordered that finding nine be amended to read as follows: "Ninth: That it is true that the plaintiff was damaged in an incalculable amount by reason of the failure of the defendant to deliver said beans."

It is further ordered that finding number eleven be amended to read as follows: "Eleventh: That it is true that by the terms of said agreement the plaintiff accepts delivery only of beans delivered by its members and that it is not so constituted that it can go into the open market and obtain beans, and it is true that by reason of the failure of the defendant to deliver said beans, the said plaintiff was unable to fulfill contracts made by it in connection with the sale of beans by it to other persons."

It is further ordered that finding number twelve be amended to read as follows: "Twelfth: That the plaintiff has incurred a reasonable and necessary expense of one hundred dollars as and for attorney fees in the prosecution of this action."

It is further ordered that finding number thirteen be stricken out.

It is further ordered that the conclusions of law be amended to read as follows: "That the plaintiff is entitled to judgment against the defendant in the sum of two hundred and thirty dollars, together with one hundred dollars attorney's fees, and its costs of suit herein expended."

The judgment is reversed and the trial court is directed to enter judgment in favor of the plaintiff against the defendant in accordance with the aforesaid findings and conclusions of law, the appellant to recover its costs of appeal.

Plummer, J., and Finch, P. J., concurred.