[Civ. No. 3416.  Second Appellate District, Division One.—March 18, 1921.]

# ANAHEIM CITRUS FRUIT ASSOCIATION (a Corporation), Respondent, v. L. C. YEOMAN, Appellant.

[1] Contracts—Penalty for Breach—When Enforceable.—A contract is not enforceable where a sum of money as a penalty is provided to be paid in the event of a breach and the sum fixed has no reference to, and finds no support in, the amount of actual damage sustained by the complaining party.

[2] Id.—Fixing Damages in Advance—Code Provision.—Under sections 1670 and 1671 of the Civil Code, the enforcement of a condition fixing damages in advance is not allowed, except "when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

[3] Id.—Co-operative Organization to Sell Fruit — Violation of By-laws—Recovery of Agreed Liquidated Damages.—Where the by-laws of an association organized for the purpose of the better handling of citrus fruits through the co-operative and joint effort of its members gives the association the exclusive right to manage and control the harvesting and marketing of crops of the several members and requires of a stockholder who fails to permit the association to market his fruit, while remaining a member, that he pay the sum of fifty cents per box of fruit otherwise sold or consigned, upon the failure of a member to market his fruit in the manner agreed the association may recover the sum specified per box as liquidated damages.

[4] Id.—Character of Organization—Legality of Purposes—Presumption.—It will not be inferred, without proof of the fact, that an organization, the purposes of which appear to be legal and legitimate on their face, is actuated by a hidden design to operate in a way that is prohibited by law.

[5] Id.—Liquidated Damages—Recovery by Nonprofit Corporation. Where the by-laws of an association organized for the purpose of the better handling of citrus fruit through the co-operative and joint effort of its members gives the association the exclusive right to manage and control the harvesting and marketing of crops of the several members and requires of a stockholder who fails to permit the association to market his fruit, while remaining a member, that he pay the sum of fifty cents per box of fruit otherwise sold or consigned, the character of such association as a nonprofit organization does not militate against its right to claim the liquidated damages specified, upon the failure of a member to market his fruit in the manner agreed.

APPEAL from a judgment of the Superior Court of Orange County. Z. B. West, Judge. Affirmed.

The facts are stated in the opinion of the court.

Leonard Evans and Frank F. Oster for Appellant.

H. C. Head and A. W. Rutan for Respondent.

JAMES, J.—In this action there was a judgment for the plaintiff, and defendant has appealed therefrom, adopting the alternative method in bringing up the record. There is printed in appellant's brief material portions of the judgment-roll and such evidence as is relevant to a consideration of the questions presented.

The cause of action alleged in the complaint was for the recovery of a sum of money as liquidated damages arising under a term of a contract made by defendant with the plaintiff. In the record presented it is shown that the plaintiff was, at all times material to the controversy, a corporation organized for the purpose of enabling its members to jointly conduct the operation of harvesting and marketing citrus fruits grown upon land owned by such members. The underlying plan of the organization was co-operative, and no persons were eligible to membership except those who produced citrus fruit which they desired to market. The by-laws which were subscribed by the stockholders provided that the corporation should have the sole and exclusive right to pick, grade, pack, market, and sell the citrus fruit raised by the members on the land described in the certificates of stock—in brief, gave to the association the exclusive right to manage and control the harvesting and marketing of crops of the several members. The condition expressed in the by-laws under which the alleged cause of action arose was that which required of a stockholder who failed to permit the association to market his fruit, while remaining a member, that he pay the sum of fifty cents per box for every box of fruit otherwise sold or consigned. In the year 1919 the defendant, who was then a member of the association plaintiff, marketed 568 boxes of oranges through agencies outside of the association, and refused to pay the stipulated

fifty cents per box to the plaintiff. This action was thereafter brought.

Appellant insists that the judgment rendered in this case cannot be upheld for several reasons, chief of which is that the stipulation expressed in the by-laws, providing for the payment of fifty cents per box by each stockholder who should violate the agreement, is void and of no effect; this because, as it is argued, the condition imposed a penalty which the law does not permit to be recovered.

[1] Aside from any provision of statute, it has long been held under decisions having their basis in the common law that a contract is not enforceable where a sum of money as a penalty is provided to be paid in the event of a breach, and where the sum fixed has no reference to, and finds no support in, the amount of actual damage sustained by the complaining party. (Anson on Contracts, par. 347.) The effort of the law has always been to work the equitable result that for the breach of a simple contract obligation there shall be cast upon the delinquent party a liability to respond to such damages only as will furnish reasonable compensation for the injury done. Hence it has been held that a penalty, so stated to be and answering to its definition strictly, is never recoverable, but that the party shall be remitted to his remedy for compensatory relief. It has also been held, nevertheless, that an agreement fixing the amount of damages for the breach of a contract in advance, where such amount could be shown to be reasonably proportionate to the actual damages sustained, or where, because of the peculiar nature of the contract, it would be extremely difficult to ascertain the amount in which the innocent party has suffered damage, is allowed to be enforced. (1 Sedgwick on Damages, par. 403 et seq.) [2] Our Civil Code (secs. 1670, 1671) has narrowed the rule by not allowing the enforcement of a condition fixing damages in advance except "when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage"; hence, we have only to inquire in this case as to whether the contract was, in its terms and conditions, and as shown by surrounding circumstances, such as to fall within the denominated class. In construing contracts for the purpose of determining whether the damages provided to be secured

should be treated as a penalty, or as damages properly
liquidated, the courts have paid some attention to the
terms used by the parties in describing these damages. For
instance, in *Taylor* v. *Sandiford*, 7 Wheat. 13, [5 L. Ed.
384, see, also, Rose's U. S. Notes], the court said: "The
parties themselves denominate it a penalty, and it would
require very strong evidence to authorize the court to
say that their own words do not express their own intent."
This language is a fair expression of the conclusion ex-
pressed in earlier cases. It need only be added that more
recent authorities, including decisions of our own supreme
court, have receded from the view that the language of the
parties in characterizing the damages fixed is controlling, or
of any great force in determining the legal effect to be given
the contract; this for the reason that the intention of the
parties is not the main fact to be ascertained in such a
case, but it is rather that the court shall be enabled to find
as to whether, under all the circumstances, the parties have
made a contract which is, under the law, enforceable.
Under this rule the assertions of the persons concerned as
expressed in their contract become items only to be con-
sidered in the aggregate of the evidence.

Our supreme court in *Nakawaga* v. *Okamoto*, 164 Cal.
718, [130 Pac. 707], has said: "In determining whether a
provision in a contract is for liquidated damage or for a
penalty, 'the supreme rule, so often announced, is that the
construction of the stipulations depends, in every case,
upon the intent of the parties, as evidenced by the entire
agreement construed in the light of the circumstances
under which it was made.' " Upon analysis it will be seen
that the cases of *Potter* v. *Ahrens*, 110 Cal. 674, [43 Pac.
388], and *Consolidated Lumber Co.* v. *City of Los Angeles*,
33 Cal. App. 698, [166 Pac. 385], announce neither a more
extended nor limited construction than is declared applica-
ble in the case first cited. [3] In controversies of this
kind the difficulty is not so much in finding the rule of law to
apply to a case which admittedly falls within the excepted
class described in section 1671 of the Civil Code, but rather
to determine whether under the given facts the case is en-
titled to be so classified. The parties to the contract here un-
der consideration did denominate the sums which the defend-
ant would be required to pay by reason of a failure to mar-

ket his fruit through the plaintiff association as "liquidated damages" so that as an item in the evidence suggesting propper interpretation to be given, the expression used indicates a recoverable damage and not a penalty. Irrespective of this expression in the contract, we think that the facts and circumstances shown in evidence all support the plaintiff's contention that recovery should be sustained for the amount fixed by the by-laws of the association. The association was organized for the purpose of the better handling of citrus fruits through the co-operative and joint effort of its members. From the nature of the organization and the statement of its purposes as found in its articles and by-laws, it can be fairly and reasonably inferred that by the co-operation of its members, mutual advantages would accrue to all through greater economy in handling and shipping and the securing of more advantageous marketing facilities. These results would be dependent directly upon the performance by the members of their agreement to deliver their fruit into the hands of the association for the purposes declared. Defendant sought to show at the trial that the damage which would accrue to the association by reason of any of its members failing or refusing to market their fruit through the association could be easily and exactly ascertained, and that such damage would consist wholly of a proportionate amount of overhead operating cost. By the line of questioning pursued, it was made clear that the association would suffer an actual monetary loss by reason of the failure of defendant to deliver his fruit at the association packing house for market, as he had agreed to do, but in the very nature of the case we do not think that such damage should be the only damage considered to have been suffered by the plaintiff. Other elements have already been suggested. The existence and life of the association itself depended upon its being furnished fruit to dispose of in the public market. A reduction in the amount of fruit so handled would not only tend to increase the overhead cost to the nontransgressing members, but, we may assume, to some extent affect the prestige and standing of the association as a marketing concern. The argument would be the same, regardless of the quantity of fruit which might have been delivered by the defendant, whether it composed but a small fractional part or one-half or more of the entire

product designed to be marketed by the plaintiff agency. Enough has been said, we think, to show that the case falls within the class as to which the law permits damages to be liquidated by contract in advance of their occurrence. It follows as a necessary conclusion that plaintiff was entitled to recover the exact amount fixed in its contract as the sum per box which defendant should pay by reason of his failure to market this fruit in the manner agreed.

[4]   There is nothing in the articles of incorporation of the plaintiff or its by-laws, or in the evidence of its methods, which tends to show that any purpose of the association was to do acts in restraint of trade or produce an unlawful monopoly. The statute of this state defining acts which are made penal as having an improper effect upon merchandising expressly excepts organizations formed for the purpose of conducting operations for marketing at a reasonable profit or the marketing of products "which cannot otherwise be so marketed." (Stats. 1909, p. 593.) It will not be inferred, without proof of the fact, that an organization, the purposes of which appear to be legal and legitimate on their face, is actuated by a hidden design to operate in a way that is prohibited by law. None of the cases cited by appellant fit the facts illustrated here. *Herriman* v. *Menzies*, 115 Cal. 16, [56 Am. St. Rep. 81, 35 L. R. A. 318, 44 Pac. 730], cited by respondent, is in point as sustaining the conclusions which we have just expressed.

The complaint contained a statement of the provisions as to the organization of the plaintiff, the fact that the defendant was a member thereof, and set out that portion of the by-laws relating to the agreement made by the members of the association respecting the marketing of their fruit and the paying of the amount of fifty cents per box for a failure to deliver the fruit to the association; it contained a statement of the number of boxes of oranges which were diverted from the agency of the plaintiff by the defendant, and a statement of the demand made by the plaintiff upon the defendant, and an allegation that plaintiff had suffered damages by the act of defendant and that it was "impracticable and extremely difficult to fix the actual damage suffered." The demurrer of the defendant to the complaint was, we think, properly overruled.

[5] The plaintiff's existence as a nonprofit association does not in anywise militate against its right to claim the damages recovered. As a corporation considered singly, it designed to make no profit; the advantages, pecuniary and otherwise, resultant upon its operations, descended immediately to the co-operating stockholders. As an agency for the purpose of distributing this benefit in such manner, the corporation existed as such, and by its corporate name it was entitled to prosecute this action. As to whether it might, upon collecting the money, sequester it in a fund not contemplated by the terms of its articles, and so consummate an act *ultra vires,* is of no concern here. No such intent is shown.

The judgment appealed from is affirmed.

Conrey, P. J., ar 1 Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 16, 1921.

All the Justices concurred except Olney, J., who voted for granting of petition.