[Civ. No. 4649. First Appellate District, Division One.—November 20, 1923.]

POULTRY PRODUCERS OF CENTRAL CALIFORNIA, INC. (a Corporation), Respondent, v. JOHN M. MURPHY, Appellant.

[1] CORPORATIONS—CO-OPERATIVE ASSOCIATIONS—REPURCHASE OF STOCK —INVALID CONTRACT.—A clause in a subscription agreement of a nonprofit association of poultry producers purporting to give the association the optional right to repurchase its stock is illegal and void, but such invalid provision will not have the effect of rendering the entire agreement invalid, where such invalid provision is severable from the other provisions of the contract which are valid and supported by a proper consideration.

[2] ID. — PROMISE TO SIGN PRODUCE SALES AGREEMENT — VALID CONTRACT.—Where a subscriber for the stock of a nonprofit association of poultry producers, by his subscription agreement, promises and agrees to sign a "produce sale agreement," such agreement is valid and enforceable.

[3] ID.—LIQUIDATED DAMAGES—FINDINGS—EVIDENCE—APPEAL.—In an action by a nonprofit association of poultry producers, organized for the purpose of promoting and fostering the business of raising poultry and marketing eggs and poultry by co-operative methods, to recover liquidated damages because of the sale by defendant of eggs in violation of the terms of his agreement, a finding by the trial court that under the provisions of the agreements it is impracticable and extremely difficult to fix and determine the actual damages resulting to and suffered by plaintiff, and that the liquidated damages provided for in said agreements are valid liquidated damages, is conclusive upon appeal, where supported by the evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. J. Kierce and W. E. White for Appellant.

Sapiro, Levy, Hatfield & Hayes for Respondent.

ST. SURE, J.—The plaintiff is a nonprofit association of poultry producers, organized for the purpose of promoting

and fostering the business of raising poultry and marketing eggs and poultry by co-operative methods. The defendant, together with other producers of poultry products, signed a subscription agreement which provided for the organization of a corporation under which each producer agreed to purchase stock on the basis of one share for each 1,000 hens owned by the subscriber; the agreement further provided that the corporation (plaintiff herein) have an option to repurchase its stock; that the corporation should be organized upon the securing of subscriptions in a certain amount; and it also made provision for the number of directors, the manner of their selection, and various other matters usually contained in such a subscription agreement.

The defendant, owning about 1,000 hens, subscribed for one share of stock at the time he signed the subscription agreement, and paid $2.50, representing twenty-five per cent of the subscription price, which, in accordance with the terms of the subscription agreement, was to be credited for the stock if the organization was completed.

To the subscription agreement was attached a "produce sale agreement" providing that the signer should sell and deliver to the plaintiff corporation all eggs produced by him during the years 1917, 1918, and 1919; that the plaintiff should pool the eggs delivered with eggs of like grade and quality, market the eggs so delivered, and, after making proper deductions for marketing costs and overhead expenses, pay over the net resale price to the stockholders who had delivered the eggs; also that plaintiff might recover liquidated damages for the eggs sold by the signer in violation of the terms of the agreement. The requisite number of subscriptions was secured and the corporation was organized. The defendant refused to sign the "produce sale agreement," and sold 11,400 dozen eggs in violation of its terms.

This suit was commenced for the purpose of compelling the defendant to execute the "produce sale agreement" which he had agreed to execute in the subscription agreement; to secure specific performance of the provision in the "produce sale agreement" that the defendant should sell and deliver all eggs produced by him to the plaintiff; to recover liquidated damages for the eggs sold by the defendant in violation of the terms of the agreement, and to recover the

balance of $7.50 due on the defendant's stock subscription. The period of performance of the "produce sale agreement" had elapsed before the case was brought to trial.

The lower court gave judgment in favor of the plaintiff and against the defendant, directing defendant to sign the "produce sale agreement," and awarding the plaintiff $577.50, which sum represents a balance of $7.50 due on a subscription for stock, and $570, liquidated damages for the failure to deliver eggs to the plaintiff in accordance with the terms of the "produce sale agreement."

Defendant appeals, attacking the judgment upon the grounds: First, that the provision of the subscription agreement giving the plaintiff an option to repurchase its stock is illegal, and that this renders the entire contract void; second, that because of the absence of mutuality in the "produce sale agreement," it cannot be specifically enforced; third, that as the contract is illegal no damages can be recovered for the breach thereof.

Counsel for defendant call our attention to the decision of the supreme court in *Poultry Producers of Southern California, Inc., v. Barlow,* 189 Cal. 278 [208 Pac. 93]. For the sake of brevity we will designate and hereafter refer to the cited case as the Barlow case. In the Barlow case plaintiff corporation recovered judgment in the lower court against the defendant, one of the contracting stockholders, for liquidated damages for breach of contract by reason of sale of eggs to other purchasers, and for specific performance of the contract to sell and deliver eggs to plaintiff during the unexpired term covered by the contract, and enjoining defendant from making sales of his product to other persons. The district court of appeal affirmed the judgment of the trial court for recovery of damages, but granted a reversal as to injunction and specific performance. The supreme court took the matter over for hearing. "We were in accord with the part of the decision affirming the judgment for damages," say the supreme court, "but were not satisfied at the time that plaintiff was not also entitled to the equitable relief by injunction and specific performance. On further consideration of this part of the judgment we have reached a conclusion in accord with that of the district court of appeal."

The purpose of the plaintiff corporation in the Barlow case and the purpose of the plaintiff corporation in the instant case are identical. Each corporation was organized for the purpose of promoting the raising of poultry and the production of eggs through and by means of co-operative methods that had been suggested by the state market director. Counsel for defendant assert that in both cases the subscription agreement is substantially identical, and that the only difference between the Barlow case and the instant case is that a "produce sale agreement" was executed by both parties in the former, while in the latter it was not signed by the defendant until he was compelled to do so by the judgment of the lower court.

[1] In the Barlow case the supreme court held that the clause in the subscription agreement purporting to give to the corporation to be formed thereunder the optional right to purchase its stock from any of its shareholders was illegal and void, and consequently unenforceable. We quote from the opinion: "The defendant, as well as each of the other poultrymen who joined with him in the execution of the subscription agreement and the 'produce sale agreement,' promised to do several things, one of which was to give to the corporation about to be incorporated and organized, an optional right to purchase its own stock at any time that it elected so to do. The corporation was not obligated to buy its own shares. It could do so or not at its option. It is here seeking to recover damages for the breach of, and to specifically enforce one only of several promises made by defendant—a promise that, considered by itself, is legal and valid. The exercise by the corporation of its optional right to purchase any of defendant's stock, is no part of the consideration for any of the promises made by defendant. The option was intended for the benefit of the corporation, not defendant. Each of the valid promises made by defendant is supported by a legal consideration. Defendant's illegal and unenforceable promise to give to the corporation, when formed, the optional right to purchase any of his stock at any time after its issuance to him, is not so mingled and bound with the other and valid promises that they may not be separated. All of the consideration moving from the corporation to defendant for his legal promises, is legal and valid." The obvious and conceded similarity between the Barlow

case and the one at bar makes the opinion in the Barlow case decisive of the first point urged by defendant, and renders further discussion thereof by us unnecessary.

[2] The next contention of defendant is that the trial court erred in requiring him to sign the "produce sale agreement." His counsel argue that this action of the trial court compelled him to specifically perform the provisions of the signed subscription agreement, and that, upon the authority of the Barlow case, this cannot be done. In the Barlow case, as we have seen, the lower court gave a decree of specific performance, compelling defendant to deliver his eggs to the plaintiff corporation in accordance with the terms of the "produce sale agreement." The supreme court held that, in this particular, the contract called for services on the part of the plaintiff corporation of a highly personal nature, requiring the exercise of skill and discretion and covering repeated transactions to extend over a number of years, and declared that it has not been the practice of courts of equity to attempt to enforce such complicated personal obligations, or to burden themselves with the supervision of frequently recurring duties of contracting parties. The supreme court therefore held that such a decree of specific performance was improper. Concerning the promise of the defendant to sell and deliver to plaintiff corporation all the eggs produced from his poultry during a given period of time, the supreme court held that such promise was a valid one, and that plaintiff corporation was entitled to damages which the trial court found were suffered by it' by reason of defendant's breach. As we have heretofore stated, in the Barlow case the producers' agreement was signed by all of the parties, while in this case the defendant refused to sign it. We think that the promise of defendant to sign the "produce sale agreement" is valid and enforceable (*Wharton* v. *Stoutenburgh*, 35 N. J. Eq. 266), and that there is nothing in the decision of the Barlow case to the contrary. This case is one in equity, and the trial court was authorized to grant any relief consistent with the case made and embraced within the issues. (Sec. 580, Code Civ. Proc.; *Zellerbach* v. *Allenberg*, 99 Cal. 57, 68 [33 Pac. 786].) And if this were not so, plaintiff might invoke that maxim of jurisprudence which reads: "That which ought to have been done is to be regarded as done in favor of him to whom,

and against him from whom, performance is due'' (sec. 3529, Civ. Code).

[3] Upon the question of damages the court found that under the provisions of the agreements it was impractical and extremely difficult to fix and determine the actual damages resulting to and suffered by the plaintiff from the failure and refusal of defendant to deliver eggs to plaintiff, and that the liquidated damages provided for in said agreements were valid liquidated damages. This finding, upon a question of fact, amply supported by the evidence, is conclusive upon us. If more need be said, it seems to be settled that the propriety of liquidated damages in a case such as this is recognized in *Poultry Producers of Southern California, Inc.,* v. *Barlow, supra,* and *Anaheim Citrus Fruit Assn.* v. *Yeoman,* 51 Cal. App. 759 [197 Pac. 959].

The judgment is affirmed.

Tyler, P. J., and Needham, J., *pro tem.,* concurred.