[Civ. No. 5598. First Appellate District, Division Two.—April 18, 1928.]

COLMA VEGETABLE ASSOCIATION (a Corporation), Appellant, v. G. BONETTI et al., Respondents.

[Civ. No. 6232. First Appellate District, Division Two.—April 18, 1928.]

COLMA VEGETABLE ASSOCIATION (a Corporation), Respondent, v. G. BONETTI et al., Appellants.

Harry H. Baier for Plaintiff and Appellant.

Howard Harron for Defendants and Appellants.

MURPHEY, J., *pro tem.*—This is an appeal upon the judgment-roll alone. The facts, as developed by the findings, are substantially as follows: The defendant G. Bonetti & Company is a copartnership of which G. Bonetti is a member and has been a member during all the time covered by the transaction involved in this litigation; that there were other members of said copartnership; that the defendant copartnership became a member of the Colma Vegetable Association, the plaintiff in this action, in May, 1922; that the plaintiff association, a nonprofit corporation, was at all the times mentioned in the complaint a co-operative marketing association without capital stock, organized and existing by virtue of the laws of this state; that it was the purpose of said co-operative marketing association to market vegetables and food products without profit to itself and with a reasonable profit to its membership; that at all said times the defendant copartnership has been engaged in and carrying on the business of farming, raising and producing agricultural products for sale and during all said time transacted and conducted said business under the common or firm name of G. Bonetti & Company; that in May, 1922, said copartnership, pursuant to the rules and regulations of said plaintiff's association, agreed to and did become a member of said Colma Vegetable Association and has ever

since retained said membership; that in May, 1923, said copartnership, together with other members of the plaintiff association consisting of approximately sixty individuals and firms, all agriculturists, entered into a written agreement herein; under said agreement the plaintiff agreed to accept from its members all cabbage, lettuce, cauliflower, and potatoes produced by said members and to sell and market the same to the best advantage and to collect on said sales the money to become due thereon, which services it agreed to perform without compensation other than the expenses of marketing, which said expenses of marketing were to be apportioned among the members of the association and each of them; that plaintiff agreed to place the products of its members on the market in and outside of San Francisco in such manner as to avoid congestion of said products in any one place and to keep itself informed of the market conditions; that it would dispose of the products of its members to the best advantage and at a price which would enable them to make a reasonable profit on the sale thereof. It was further provided by said agreement that the members would deliver to plaintiff all the cauliflower, cabbage, lettuce, and potatoes produced by them and each of them for a period of five years from the date of said agreement and permit the plaintiff to sell the same under its own name and fix the price thereof. It was further provided at the time the said agreement was executed and entered into, that any sale by any member of said association to any person, firm, or corporation of any of said products should constitute a violation of said agreement, and that from the nature of the case it would be impracticable and extremely difficult to fix the actual damage suffered by plaintiff and the members of said association not violating the agreement, and it was agreed and provided that any member so violating the agreement should be liable to said corporation in liquidated damages in the sum of one thousand dollars, to be used by the plaintiff for the benefit of the members not violating the agreement. It was further provided that the purpose of said agreement was to give the parties of the second part the benefit of co-operative marketing and co-operative sales of their products and it should not be construed as an attempt on the part of

either of the parties to increase the market price of said product to such an extent that any of the parties of the second part, or either of them, would derive from the sale of said products an unreasonable profit; that on and since the twenty-fourth day of July, 1924, the defendants G. Bonetti and G. Bonetti & Company, although then engaged in the business of producing agricultural products covered by said agreement, delivered all their said products in violation and breach of the terms of said agreement to other persons, firms, and corporations and ever since that time have refused to deliver said products to plaintiff and refused to be bound by any of the terms of said agreement; that the plaintiff has fully performed all the terms and conditions precedent of said agreement on its part to be performed and has at all times and now is ready and willing to comply therewith and has at all times demanded performance thereof by the defendants G. Bonetti and G. Bonetti & Company; that up to the twenty-fourth day of July, 1924, the defendants G. Bonetti and G. Bonetti & Company, performed and continued to perform all the terms and conditions of the aforesaid marketing agreement of May 23, 1923. It is further found as a fact that during the times covered by the complaint in this action many changes were made in the personnel of the copartnership G. Bonetti & Company, but that no notice of any kind of such change was given to the plaintiff and that the plaintiff never knew or had any knowledge of any such changes; that the said firm during all the times up to the twenty-fourth day of July, 1924, continued to accept the benefits accruing under said agreement; that all members of the firm at all times had full knowledge of the existence of and activities under said contract; that at no time was the copartnership G. Bonetti & Company canceled or annulled or dissolved nor was any new copartnership formed under said name; that the agreement of May 23, 1923, was not at any time procured by misrepresentations, concealment or circumvention or any unfair practices of any kind whatever nor was the same procured through fraud, misrepresentation, or duress or through any such means.

On this state of facts, conclusively determined as such in the absence of any record, statement or bill of exceptions,

the court rendered judgment in favor of the plaintiff and against the defendants G. Bonetti and G. Bonetti & Company, decreeing: (a) That the contract should be specifically performed; (b) That defendants be restrained during the life of the agreement from selling their products to any other person, firm or corporation; (c) For damages in the sum of $500. The defendants G. Bonctti and G. Bonetti & Company appeal from the entire judgment and the plaintiff, by a separate appeal on the same record, appeals from that portion of the judgment whereby it is awarded only the sum of $500 in damages, it being its contention that it is entitled to the full award of liquidated damages provided for in the agreement of May, 1923. By stipulation of the parties these appeals were consolidated and have been heard together.

The first contention of the appealing defendants is that there was no appearance in the trial court of the defendant copartnership. This point is raised for the first time in this court. In its findings and in its judgment the trial court states that Howard Harron appears as attorney for these defendants and the judgment is rendered against the defendants G. Bonetti and G. Bonetti & Company. In the absence of any record of the proceedings had at the trial of the action in the superior court, the recitals and statements in the findings and in the judgment are conclusive and we must determine this contention adversely to the appellants. If there was any question about proper appearance of said copartnership in the trial court, in view of the findings and judgment, that matter should have been settled by proper proceedings initiated and determined in the trial court at the trial of the action. In this court Mr. Harron stated that he appeared for and represented defendants G. Bonetti and G. Bonetti & Company, the appealing defendants.

It is next contended by the appealing defendants that the complaint, being one for specific performance, is fatally defective in that it does not set forth the facts to disclose that the contract was just, fair, and reasonable as to the defendants. There is no substantial merit in this contention. The complaint sets forth specifically the acts to be performed by the respective parties under the contract; the benefits to be derived by each, and the burdens

and responsibilities assumed by each. It may be said that under the particular kind of a contract involved in this litigation, co-operative marketing agreement, all the profits and benefits accrued to the participating members, the services of the corporation itself being nonremunerative and nonprofit sharing, and the court specifically and definitely found that all these allegations were true. ■ In the absence of any record in this case it must be assumed that these allegations were sustained by competent proof. In this connection we call attention to the language of the supreme court in the case of *Baker* v. *Miller*, 190 Cal. 263, at 267 [212 Pac. 11, 13]. The court says:

"Viewed as a whole, we feel there is no escape from the conclusion that the complaint is insufficient and the general demurrer interposed by the defendant should have been sustained." (This is an action in specific performance in which the complaint was attacked in the same manner as it has been attacked in the instant suit. The trial court overruled the demurrer.) "We are not inclined, however, to reverse the judgment for that reason. Whether the defendant called the attention of the court below to the infirmity of plaintiff's complaint, or only demurred as a matter of form, does not appear. After the demurrer was overruled, however, she answered, denying generally and specifically the averment of the complaint attempting to allege the adequacy of the consideration and the fairness of the contract. . . . With all of the evidence before it, the trial court found that the contract between the parties was fair and just and liberal in its provisions in favor of the defendant. The evidence, we think, amply supports the findings."

■ In the instant case, of course, there is no evidence before this court and it must be conclusively presumed in support of the judgment that there was ample, substantial and competent evidence to support the findings in the trial court.

■ The next contention of the appealing defendants is that the provisions of the contract of May 23, 1923, with regard to liquidated damages are in effect and in fact a contract providing for a penalty, and, therefore, void. Appellants cite many authorities in support of this assignment, none of which, however, is applicable to the facts of the instant case. In the case of *Anaheim Citrus Fruit Associa-*

*tion* v. *Yeoman*, 51 Cal. App. 759 [197 Pac. 959], a case similar in character to the one here under consideration, the court said:

"Defendant sought to show at the trial that the damage which would accrue to the association by reason of any of its members failing or refusing to market their fruit through the association could be easily and exactly ascertained, and that such damage would consist wholly of a proportionate amount of overhead operating cost. By the line of questioning pursued, it was made clear that the association would suffer an actual monetary loss by reason of the failure of defendant to deliver his fruit at the association packing house for market, as he had agreed to do, but in the very nature of the case we do not think that such damage should be the only damage considered to have been suffered by the plaintiff. Other elements have already been suggested. The existence and life of the association itself depended upon its being furnished fruit to dispose of in the public market. A reduction in the amount of fruit so handled would not only tend to increase the overhead cost of the nontransgressing members, but, we may assume, to some extent affect the prestige and standing of the association as a marketing concern. The argument would be the same, regardless of the quantity of fruit which might have been delivered by the defendant, whether it composed but a small fractional part or one-half or more of the entire product designed to be marketed by the plaintiff agency. Enough has been said, we think, to show that the case falls within the class as to which the law permits damages to be liquidated by contract in advance of their occurrence. It follows as a necessary conclusion that plaintiff was entitled to recover the exact amount fixed in its contract as the sum per box which defendant should pay by reason of his failure to market this fruit in the manner agreed."

In the case of the *Consolidated Lumber Co.* v. *Los Angeles*, 33 Cal. App. 698 [166 Pac. 385], the court said:

"Section 1671 of the Civil Code provides: 'The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual dam-

age.' . . . Whether 'it would be impracticable or extremely difficult to fix the actual damage' in a case in which the parties have attempted to agree upon liquidated damages in advance, is a question of fact. It will be noted that the specific declaration is made in the contract here in question that the actual damages to be suffered from a breach would be difficult to ascertain, and that the parties are making provision for liquidated damages in lieu of actual damages. The decided cases in this state are uniformly to the effect that such a declaration tends strongly to establish the fact required by the statute to exist; and further tends to control the question as to whether the provision is one for liquidated damages or for a penalty, where the contract appears upon its face to be one allowed by the terms of section 1671.'' (Many cases are cited by the court in support of this doctrine.) ''There is nothing in the findings to negative the statement in the contract that the actual damages for a delay in delivery of the lumber would have been difficult of ascertainment. That declaration is therefore conclusive.''

In the instant case the trial court specifically found that it is impracticable and extremely difficult to fix the actual damages accruing to the plaintiff by reason of the acts of said defendant in violating said agreement and, of course, in the absence of any record in this case there is and can be no evidence to contradict this finding of the trial court; on the contrary, it must be presumed that there was ample evidence to support this finding.

In the case of *Poultry Producers, etc.,* v. *Murphy,* 64 Cal. App. 450 [221 Pac. 962], the court said: ''Upon the question of damages the court found that under the provisions of the agreements it was impractical and extremely difficult to fix and determine the actual damages resulting to and suffered by the plaintiff from the failure and refusal of defendant to deliver eggs to plaintiff, and that the liquidated damages provided for in said agreements were valid liquidated damages. This finding, upon a question of fact, amply supported by the evidence, is conclusive upon us. If more need be said, it seems to be settled that the propriety of liquidated damages in a case such as this is recognized in *Poultry Producers of Southern California, Inc.,* v.

*Barlow* [189 Cal. 279, 208 Pac. 93], and *Anaheim Citrus Fruit Assn.* v. *Yeoman,* 51 Cal. App. 759 [197 Pac. 959]."

■ It is next contended by the appealing defendants that at the time the agreement in question was made the provision for liquidated damages and relief by specific performance and injunction were ineffectual as at that time the provisions with respect to these matters were not a part of the Cooperative Marketing Act then in effect, it being the contention of appellants that the Cooperative Marketing Act containing these provisions did not become effective until August, 1923. In this connection the court found "that the plaintiff above named, Colma Vegetable Association, a corporation, is now and was during all times herein mentioned, and at all times mentioned in plaintiff's complaint, a nonprofit cooperative association and corporation without capital stock, duly organized and existing under and by virtue of the law of the State of California, and pursuant to the act known as the Cooperative Marketing Act under the laws of the State of California, pursuant to Statutes of 1923, Chapter 103, Section 653aa to 653xx, Title XXI, of the Civil Code of the State of California."

It is the contention of the appellant that the legislation above named increased the liability of the defendants under their contract. Remedial statutes which are retrospective in character do not impair contracts or interfere with fixed liability. They are not unconstitutional and the legislature may from time to time change or modify the remedy provided. In so doing it does not affect any vested right. It may be generally said that when the defendant signed the agreement which is here sued upon he obligated himself to deliver all his agricultural products to the plaintiff, when he fails to do that he commits a legal wrong and thereby submits himself to the remedies provided by law.

Cooley's Constitutional Limitations, 7th ed., p. 515: "As a general rule, every state has complete control over the remedies which it offers to suitors in its courts. . . . It may give a new and additional remedy for a right or equity already in existence. And it may abolish old remedies and substitute new; or even without substituting any, if a reasonable remedy still remains."

In the case of *Aikins* v. *Kingsbury*, 170 Cal. 674, 680 [151 Pac. 147, 148], the supreme court of this state says: "The passage of an act providing a new remedy for the state as a contracting party does not necessarily deprive the other party to the contract of his rights. . . . A remedy may be given where none existed before and it follows that a new and more liberal remedy may be substituted for one which was in effect at the time the contract of sale was made. . . . In the proposition often stated in the decisions that parties contract with reference to existing laws, and that such laws become a part of the contract, the reference is to those laws which determine and fix the obligation of the contract, the correlative rights and duties springing from it and not to laws of mere procedure prescribing remedies. With reference to these, there is ordinarily no obligation arising, but the contract is made in contemplation of the power of the legislature to change them. Of course, all remedy cannot be taken away, nor can the existing remedy be so altered as to take away or impair any of the rights given by the contract as interpreted by existing law. . . .

"The distinction between the obligation of a contract and a remedy given by the legislature to enforce that obligation exists in the nature of things, and without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation may direct."

In the case of *Brown* v. *Staple Cotton Cooperative Association,* 132 Miss. 859 [96 South. 849], the court says:

"It is true that said Cooperative Marketing Act having been adopted after the contract here considered was entered into, does not and could not undertake to control the substantive rights of the parties to this cause. It is not true, however, that the remedies therein provided are not applicable to past as well as future transactions. It is too well settled to merit discussion that a remedy afforded by a statute passed subsequent to the date of the contract in question may be invoked by a party to the contract who has been wronged by its nonperformance. Such legislation does not impair the obligation of a contract. The obligation of a contract has reference alone to the rights of the parties arising thereunder and not to any remedy for their

enforcement. A law creating a remedy applies to prior as well as future contracts and is constitutional.''

There are many other cases holding to this same effect. (*Pignaz* v. *Burnett,* 119 Cal. 157 [51 Pac. 48]; *Galland et al.* v. *Lewis,* 26 Cal. 46; *People* v. *Bank of San Luis Obispo,* 159 Cal. 65 [Ann. Cas. 1912B, 148, 37 L. R. A. (N. S.) 934, 112 Pac. 866]; *Buck* v. *Canty,* 162 Cal. 226 [121 Pac. 924]; *Boggs* v. *Ganeard,* 148 Cal. 711 [84 Pac. 95]; 5 Cal. Jur. 781.)

The next contention of the appealing defendants is that the contract cannot be specifically enforced and injunctive relief may not be given under the laws of this state. In this connection the appellants quote from the case of *Poultry, etc.,* v. *Barlow,* 189 Cal. 279 [208 Pac. 93], wherein the supreme court, while sustaining many features of the Cooperative Marketing Act, held that specific performance would not lie by reason of want of mutuality of remedies, and in this connection the court said:

''Were it not for the doctrine of mutuality of remedy as a prerequisite to the equitable relief here demanded, there would seem to be no good reason for denying respondent the more adequate relief that would be thus afforded to marketing corporations such as this which are more or less dependent for their efficient maintenance and operation upon ability to specifically enforce the mutual obligations of their members. The individual stockholder thus contracting the delivery of his wares would seem to be adequately safeguarded by his legal remedy for damages.''

This decision of the supreme court was rendered in July, 1922. In response, apparently to this suggestion of the supreme court, the legislature at its succeeding session enacted section 653pp of the Civil Code, which provides:

''(a) The by-laws or the marketing contract may fix, as liquidated damages, specific sums to be paid by the member or stockholder to the association upon the breach by him of any provision of the marketing contract,'' etc.

''(b) Injunctions. In the event of any such threatened breach of such marketing contract by a member, the association shall be entitled to an injunction to prevent the further breach of the contract and to a decree of specific performance thereof.''

By this enactment the legislature has granted to cooperative marketing associations the remedies of injunction and specific performance and deliberately abrogated all contradictory legislation and judicial determinations.

These co-operative marketing acts have been sustained in a great number of states. In *Potter* v. *Dark Tobacco Growers Cooperative Association,* 201 Ky. 441 [257 S. W. 33], the court said:

"Farmers, if unorganized, necessarily act as individuals and not as groups in marketing their products, resulting in 'dumping' by the farmers, distribution by speculators, an unconscionable and uneconomic spread between producer and consumer in the necessities of life, and an inevitable demoralization of basic economic conditions, to the hurt directly or indirectly of every citizen.

"With a clear recognition of this fact borne in upon the public conscience by the threatened economic collapse of the farming industry indispensable to public welfare and national stability, if not national existence, an enlightened public opinion unmistakably demands that farmers be permitted to organize for the marketing of their crops, not merely for their own protection, but for the public good."

The supreme court of Kansas in *Kansas Wheat Growers' Association* v. *Schulte,* 113 Kan. 672, 673 [216 Pac. 311], gives an enlightening exposition of this subject matter. The court says:

"This association was organized for the sole purpose of marketing the wheat raised by its members, and performing such functions as are incidental thereto. From the very nature of things it must have the wheat or it cannot exist. It has no power to buy wheat; hence it cannot go into the open market and purchase wheat to fill its contracts of sale, if the members fail to deliver, and thus sustain its existence or recoup its loss. Even the payment of damages of 25 cents per bushel stipulated to be paid by a member for each bushel he produces and sells elsewhere would not sustain the association and enable it to do business for which it is incorporated. Hence, as a practical matter, it is of little consequence that the member is solvent and able to respond in damages. If the association received damages from all, or a substantial portion, of its members,

it would cease as a going concern, or be so seriously handicapped as to destroy its usefulness. Wheat is the only commodity the association can use as a going concern. All it can do with money is to pay its expenses and disburse the balance among its members. It necessarily follows that there is no adequate remedy at law. The only adequate remedy is injunction, preventing the member from selling to others, and thus forcing the delivery of the wheat to the association. *Washington Cranberry Growers' Assn.* v. *Moore,* 117 Wash. 430 [25 A. L. R. 1077, 201 Pac. 773, 204 Pac. 811]; *Phez Co.* v. *Salem Fruit Union,* 103 Or. 514 [25 A. L. R. 1090, 201 Pac. 222, 205 Pac. 970]; *Owen County Burley Tobacco Society* v. *Brumback,* 138 Ky. 137 [107 S. W. 710]."

With respect to the remedial provisions the co-operative marketing laws have been specifically passed upon and affirmed in Oregon, Washington, and Kentucky and have been enacted in some thirty other states.

It may fairly be said that irrespective of the provisions of the Cooperative Marketing Act, the remedies of specific performance and injunction would seem to be available to the plaintiff for the reason that the defendants in their contract have agreed that the plaintiff may have such remedy. There are many authorities in support of the subject. (California Civ. Code, sec. 3513; *Allen* v. *Hance,* 161 Cal. 189 [118 Pac. 527], holds that a statute designated for the protection and benefit of the property owner may be waived by him; *Tebbets* v. *Fidelity & Casualty Company of New York,* 155 Cal. 137 [99 Pac. 501]; *Nunez* v. *Morgan,* 77 Cal. 427 [19 Pac. 753]; *Bowen* v. *Aubrey,* 22 Cal. 566.)

The last contention that we shall consider as raised by appellant is that the law is unconstitutional because it is special legislation. In the case of *Poultry Producers Assn.* v. *Barlow, supra,* in addition to holding that the law is not in contravention of the Cartwright Act [Stats. 1907, p. 984], the court generally sustained the constitutionality of the act except in so far as it applied to the remedies of specific performance and injunction. Agreements under the Cooperative Marketing Act, with these exceptions, have been sustained in a large number of cases and particularly in

the cases of the *Poultry Producers Association of Central California* v. *Murphy*, 64 Cal. App. 450 [221 Pac. 962]; *Poultry Producers of Southern California* v. *Nilsson*, 197 Cal. 245 [239 Pac. 1086]; *Anaheim Citrus Fruit Association* v. *Yeoman*, 51 Cal. App. 759 [197 Pac. 959]. In *In re Martin*, 157 Cal. 51 [26 L. R. A. (N. S.) 242, 106 Pac. 235], the supreme court says:

"These various specifications are in effect directed to the same point—namely, that the law arbitrarily selects for its operation a special class of persons. It is, we think, unnecessary at this date to cite many authorities in support of the proposition that a law is not special or lacking in uniformity merely because it does not apply to every person or subject within the state. 'An act to be general in its scope need not include all classes of individuals in the state; it answers the constitutional requirements if it relates to and operates uniformly upon the whole of any single class.' (*Abeel* v. *Clark*, 84 Cal. 226 [24 Pac. 383].) The classification created for the purposes of legislation must, of course, be a reasonable one. The test of its propriety is well stated in *City of Pasadena* v. *Stimson*, 91 Cal. 238 [27 Pac. 604], where the court declared 'that although a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law' "

In *National Union Fire Insurance Company* v. *Wanberg*, 260 U. S. 71 [67 L. Ed. 136, 43 Sup. Ct. Rep. 32], Chief Justice Taft says:

"The statute treats the business of hail insurance as affected with a public interest. In that country, where a farmer's whole crop—the work and product of a year, may be wiped out in a few minutes, and where the recurrence of such manifestations of nature is not infrequent, and no care can provide against their destructive character, it is of much public moment that agencies like insurance companies, to distribute the loss over the entire community,

should be regulated so as to be effective for the purpose. . . . There is no discrimination and no denial of the equal protection of the laws. . . .

"The legislature was evidently convinced that it would help the public interest if farmers could be induced generally to take out hail insurance, and 'temper the wind' so injurious to the agriculture of the state, and that they would be more likely to avail themselves of this protection if they could effect the insurance promptly and on the eve of the danger."

It is worthy of note that in the case just cited the supreme court forces a contract upon an insurance company against its will, justifying the legislation on the ground that the protection of the farmer's crop is a matter of public interest.

The judgment, in so far as the appealing defendant is concerned, is affirmed.

With respect to the judgment of the trial court in awarding the plaintiff the sum of five hundred dollars damages, we see no escape from the conclusion that in rendering this judgment the trial court was in error. If our conclusion with respect to liquidated damages under this character of contract is correct, it is determinative of this appeal. We know of no law that would justify the trial court in fixing an arbitrary amount as damages in contravention of the terms of the agreement made by the parties. This conclusion is confirmed by the cases hereinbefore cited, *Poultry Producers* v. *Murphy, supra,* and *Consolidated Lumber Co.* v. *City of Los Angeles,* 33 Cal. App. 698 [166 Pac. 385]. With respect to this phase of the case the judgment is erroneous. The judgment is modified by changing the five hundred dollars allowed plaintiff to one thousand dollars and as so modified the judgment is affirmed, plaintiff to recover costs on appeal.

Koford, P. J., and Sturtevant, J., concurred.