[Civ. No. 6113. Second Appellate District, Division One.—December 27, 1930.]

SIMONS BRICK COMPANY (a Corporation), Appellant, v. EAGLE INDEMNITY COMPANY (a Corporation), Respondent.

R. G. BLESSING, Appellant, v. EAGLE INDEMNITY COMPANY (a Corporation), Respondent.

Culver & Nourse and Richard J. O. Culver for Appellants.

J. Karl Lobdell and H. L. Watt for Respondent.

HOLLZER, J., *pro tem.*—The above-entitled actions were tried together and the appeals taken from the respective judgments entered therein are presented upon one and the same record. There is no real dispute as to the facts out of which the suits arose.

In March, 1925, one Callahan, as contractor, entered into an agreement with the Los Angeles city school district for the construction of two school buildings, and in connection therewith furnished a bond executed by the defendant, as surety, conditioned for the payment by the said contractor of all materials, etc., used upon said buildings. Said bond recited in part: "If said principal as contractor . . . fails to pay for any material . . . said surety will pay the sum . . . provided that a verified claim or claims shall be filed as required by an act of the Legislature of the State of California entitled, 'An Act to secure the payment of the claims of persons employed by contractors upon public works, . . . ' approved May 10, 1919."

At the time said bond was executed, the act (Stats. 1919, p. 487), referred to therein required that, before an action could be commenced on the bond, the claimant, within the period allowed by law to file claims of mechanics' liens, must file with the official body by whom the contract had been awarded, a verified statement of his claim showing that the sum due had not been paid.

After the execution of said bond, said act was amended so as to provide that the filing of such a claim should no longer be a condition precedent to commencing an action on the bond, said act becoming effective July 23, 1925 (Stats. 1925, p. 539, sec. 2).

Between April 22 and July 14, 1925, Simons Brick Company, one of the appellants herein, furnished brick which was used on one of the school buildings, and between May 1 and July 21, 1925, furnished brick which was used on the other building, on account of which material a balance of $2,392.33 still remains owing to said company.

On August 26, 1925, R. G. Blessing, the other appellant herein, completed his subcontract for the construction of a tile roof on one of said buildings, on account of which a balance of $375 still remains owing to him.

On October 14, 1925, notice of completion respecting one of said buildings was recorded, and on October 30, 1925, notice of completion of the other building was recorded.

Neither of the appellants herein filed a statement of its or his respective claim with the Los Angeles city school district.

It is conceded that if the amendment which became effective July 23, 1925, is applicable to the claims upon which these actions are being prosecuted, the appellants are entitled to judgments for the respective amounts above mentioned. The trial court, however, held that said amendment was not retroactive and rendered judgment in favor of the defendant.

Appellants contend that the amendment of July 23, 1925, in no way impaired the obligation which defendant assumed under the bond, but merely changed the procedure whereby those entitled to the remedy afforded by the act requiring such bond, might obtain such remedy. Accordingly, it is argued, since the amendment became effective before the expiration of the period within which, under the prior law, they might have been required to file a claim with the official body which had awarded the contract—indeed, the time for filing such claim had not commenced to run as to appellant Blessing on the date the amendment went into effect—the provision under the prior law requiring the filing of such claims did not apply to the claims of the appellants, and hence, they are entitled to recover on the bond.

The respondent, on the other hand, insists that the law, as it stood at the time the bond was executed, including the provision requiring the filing of the claim with the public body which awarded the contract, constituted a part of the obligation of such bond; that legislation relieving a claimant from such requirement with respect to any bond given prior to the enactment of such legislation would result in impairing the obligation of the bond, and hence, would be unconstitutional. Respondent, therefore, contends that the failure of the appellants to file a verified statement of claim, as required by the statute at the time the bond was given, bars any right of recovery herein.

An examination of the authorities convinces us that the contention of the appellant must be upheld.

In *Asbestos Mfg. & Supply Co.* v. *American Bonding Co.*, 25 Cal. App. 641 [145 Pac. 107], a bond was given pursuant to a statute enacted in 1897 (Stats. 1897, p. 202), requiring that the person seeking relief under the bond shall file with the board of public works a verified statement of his claim within thirty days from the time such work is completed, and providing further that suit may be filed by such claimant within ninety days after the filing of such claim. The work involved in that suit had been completed prior to February 26, 1912, but the claim was not filed until April 12, 1912, and the action was commenced July 18, 1912. However, the statute in force at the time of the execution of the bond was subsequently, to wit, in 1911, amended so as to extend the respective periods for the filing of claims and the commencement of suit thereon, and it was conceded that, if the act of 1911 was operative in that case, the claim was filed and likewise the suit was commenced within the proper time.

In the cited case, the bonding company, as here, insisted that the amendatory act should not be construed as being retroactive, and that the provisions of the act in force when the bond was executed should be considered the sole criterion.

The court, however, overruled the contention of the bonding company, upon the theory that a change in remedy, or the time within which it must be sought, does not impair the obligation of a contract, provided an adequate and available remedy be left, and that the amendment in question

involved merely a change of that character, citing in support of its conclusion, the cases of *National Surety Co.* v. *Architectural Decorating Co.*, 226 U. S. 276 [57 L. Ed. 221, 33 Sup. Ct. Rep. 17, see, also, Rose's U. S. Notes] , *Bear Lake* v. *Garland,* 164 U. S. 1 [41 L. Ed. 327, 17 Sup. Ct. Rep. 7] , and *Kerckhoff-Cuzner Mill Co.* v. *Olmstead,* 85 Cal. 80 [24 Pac. 648].

The first case cited was an action upon a bond given to a school district of Minnesota, conditioned that the general contractor would pay all claims for work, etc., furnished for the completion of a certain school building. On the date when the bond was executed, the law of Minnesota (Rev. Laws 1905, sec. 4539) provided that ''No action shall be maintained upon any such bond unless within 90 days after performing the last item of work, or furnishing the last item of . . . material, the plaintiff shall serve upon the principal and his sureties a written notice specifying the nature and amount of his claim . . . nor unless the action is begun within one year after the cause of action accrues.''

On April 22, 1909 (Laws 1909, chap. 413), this provision was amended so as to require the notice of claim to be given within ninety days ''after the completion of the contract and acceptance of the building by the proper public authorities'', and was further amended by requiring the action to be begun within one year ''after the service of such notice''.

Plaintiff in that case performed services and furnished materials for use in the construction of said building during July and August, 1909. He gave notice of his claim in time to comply with the amended act, but not in time to comply with the law, as it stood at the time the bond was executed.

The Supreme Court of Minnesota, *Architectural D. Co.* v. *National Surety Co.,* 115 Minn. 382 [132 N. W. 289], sustained the right of the plaintiff to recover on the bond, and overruled the contention of the surety company to the effect that the statute, if made applicable to the plaintiff's claim, impaired the obligation of the contract contained in the bond, and was, therefore, unconstitutional.

In affirming the decision of the Minnesota court, Mr. Justice Pitney, delivering the opinion for the United States Supreme Court, said in part:

"The argument for plaintiff in error is to the effect that since the right of action by a third party upon such a bond is of statutory origin, and since the statute in force at the time the bond in suit was given required a preliminary notice given to the obligors within a certain time, which notice (under *Grant* v. *Berrisford,* 94 Minn. 45 [101 N. W. 940, 1133]) constituted a condition precedent to the action as much as if it had been set out as a proviso in the bond, *a subsequent act of legislation dispensing with such notice,* or changing the time within which it was required to be given, impairs the validity of the contract within the meaning of section 10 of article I of the Constitution. . . .

"Nevertheless, granting, for the sake of the argument, the contention of the plaintiff in error that the contract in suit, so far as pertains to its obligation, is of statutory origin, it by no means follows that the provisions respecting a preliminary notice to the obligors, as a condition precedent to suit thereon, although contained in the law as it stood at the time the bond was given, cannot be constitutionally modified by subsequent legislation. The decision must turn, we think, upon the familiar distinction between a law, which enlarges, abridges, or modifies the obligation of a contract, and a law which merely modifies the remedy, by changing the time or the method in which the remedy shall be pursued, without substantial interference with the obligation of the contract itself.

"As Chief Justice Marshall observed in *Ogden* v. *Saunders,* 12 Wheat. (U. S.) 213, 349 [6 L. Ed. 606, 653, see, also, Rose's U. S. Notes], the obligation and the remedy originate at different times: 'The obligation to perform is coeval with the undertaking to perform; it originates with the contract itself, and operates anterior to the time of performance. The remedy acts upon a broken contract, and enforces a pre-existing obligation.'

"The distinction was well expressed by Mr. Justice Harlan, speaking for this court as follows: 'It is well settled that while in a general sense, the laws in force at the time a contract is made enter into its obligation, parties have no vested right in the particular remedies or modes of procedure then existing. It is true the legislature may not withdraw all remedies, and thus in effect destroy the contract; nor

may it impose such new restrictions or conditions as would materially delay or embarrass enforcement of rights under the contract, according to the usual course of justice as established when the contract was made. Neither could be done without impairing the obligation of the contract. But it is equally well settled that the legislature may modify or change existing remedies, or prescribe new modes of procedure, without impairing the obligation of contracts, provided a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract.' (*Oshkosh Waterworks Co.* v. *Oshkosh,* 187 U. S. 437, 439 [47 L. Ed. 249, 250, 23 Sup. Ct. Rep. 234, see, also, Rose's U. S. Notes], citing many previous cases.) . . .

''In the case now before us, we agree with the Minnesota supreme court in the view that *the requirement of a preliminary notice to the obligors as a condition precedent to an action upon the bond affects the remedy, and not the substantive agreement, of the parties.* And although the statute as it stood when the bond was given (Rev. Laws 1905, sec. 4539) must, under *Grant* v. *Berrisford,* be treated as if written into the contract, it still imposed a condition not upon the obligation, but only upon the remedy for breach of the obligation. Therefore, the subsequent statute (Gen. Laws 1909, chap. 413) effected merely a change in the remedy, without substantial modification of the obligation of the contract.''

In *Colma Vegetable Assn.* v. *Bonetti,* 91 Cal. App. 103 [267 Pac. 172], the plaintiff, a co-operative marketing association, instituted suit to recover liquidated damages against the defendant, one of its members, and for specific performance of, and injunctive relief upon, a contract entered into between the parties. The plaintiff association was organized under a statute known as the Co-operative Marketing Act (Stats. 1921, p. 460). After the contract upon which said action was based had been entered into, said act was amended (Stats. 1923, p. 222, chap. 103) so as to authorize recovery of liquidated damages specified in any contract made between such association and any member thereof, and said amendment further empowered the courts to direct specific performance of said contracts and to enjoin the breach thereof.

In affirming a judgment of the trial court awarding the relief authorized by this amendment, the District Court of Appeal, in course of its opinion, declared at p. 112 of 91 Cal. App. 267 [267 Pac. 172, 176]:

"It is the contention of the appellant that the legislation above named increased the liability of the defendants under their contract. Remedial statutes which are retrospective in character do not impair contracts or interfere with fixed liability. They are not unconstitutional, and the legislature may from time to time change or modify the remedy provided. In so doing it does not affect any vested right. It may be generally said that when the defendant signed the agreement which is here sued upon he obligated himself to deliver all his agricultural products to the plaintiff, when he fails to do that he commits a legal wrong and thereby submits himself to the remedies provided by law.

"Cooley's Constitutional Limitations, 7th ed., p. 515: 'As a general rule, every state has complete control over the remedies which it offers to suitors in its courts. . . . It may give a new and additional remedy for a right or equity already in existence. And it may abolish old remedies and substitute new; or even without substituting any, if a reasonable remedy still remains.'

"In the case of *Aikens* v. *Kingsbury*, 170 Cal. 674, 680 [151 Pac. 147, 148], the supreme court of this state says: 'The passage of an act providing a new remedy for the state as a contracting party does not necessarily deprive the other party to the contract of his rights. . . . A remedy may be given where none existed before and it follows that a new and more liberal remedy may be substituted for one which was in effect at the time the contract of sale was made. . . . In the proposition often stated in the decisions that parties contract with reference to existing laws, and that such laws become a part of the contract, the reference is to those laws which determine and fix the obligation of the contract, the correlative rights and duties springing from it and not to laws of mere procedure prescribing remedies. With reference to these, there is ordinarily no obligation arising, but the contract is made in contemplation of the power of the legislature to change them. Of course, all remedy cannot be taken away, nor can the existing remedy

be so altered as to take away or impair any of the rights given by the contract as interpreted by existing law. . . .

" 'The distinction between the obligation of a contract and a remedy given by the legislature to enforce that obligation exists in the nature of things, and without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation may direct.'

"In the case of *Brown* v. *Staple Cotton Cooperative Assn.,* 132 Miss. 859 [96 South. 849], the court says:

" 'It is true that said Cooperative Marketing Act having been adopted after the contract here considered was entered into, does not and could not undertake to control the substantive rights of the parties to this cause. It is not true, however, that the remedies therein provided are not applicable to past as well as future transactions. It is too well settled to merit discussion that a remedy afforded by a statute passed subsequent to the date of the contract in question may be invoked by a party to the contract who has been wronged by its nonperformance. Such legislation does not impair the obligation of a contract. The obligation of a contract has reference alone to the rights of the parties arising thereunder and not to any remedy for their enforcement. A law creating a remedy applies to prior as well as future contracts and is constitutional.' "

Again, as stated in the case of *City of Los Angeles* v. *Oliver,* 102 Cal. App. 299, 315 [283 Pac. 298, 305] : "When a law only affects the remedy or procedure, 'all rights of action will be enforceable under the new procedure, without regard to whether they accrued before or after such change in the law and without regard to whether the suit had been instituted or not, unless there is a saving clause as to existing litigation.' (*People* v. *Clark,* 283 Ill. 221 [119 N. E. 329].) "

Applying the views expressed in the foregoing decisions, we conclude that the amendment of July 23, 1925, in no way impaired the obligation assumed by the defendant in its bond, that said act merely effected a change in the procedure whereby the remedy afforded under the law, as it existed at the time the bond was executed, might be secured, and hence, relieved the appellants of the necessity of filing any

claim with the Los Angeles city school district as a condition precedent to commencing suit on the bond.

For the foregoing reasons, the judgments entered in these actions are reversed, and the trial court is directed to enter judgments in favor of the respective plaintiffs as prayed for in the respective complaints, with attorney fees in a sum to be fixed by the court.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 23, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 19, 1931.